# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3;                    CLASS ACTION
JOHN DOE 5; JOHN DOE 6; and next friends
of minors JOHN DOE 4 AND
JOHN DOE 7, on behalf of themselves and a
class of all others similarly situated,

                        Plaintiffs,                    Case No.

vs.                                                     Hon.


MICHIGAN DEPARTMENT OF CORRECTIONS ("MDOC");
RICK SNYDER, Governor of the State of Michigan;
DANIEL H. HEYNS, Director, Michigan Department of Corrections;
THOMAS FINCO, Deputy Director of MDOC Correctional Facilities Administration;
DENNIS STRAUB, former Deputy Director of MDOC Correctional Facilities Administration;
RANDY TREACHER, Chief Deputy Director of MDOC Correctional Facilities Administration;
WILLIE SMITH, Warden of Carson City Correctional Facility;
HEIDI WASHINGTON, Warden of Charles Egeler Reception and Guidance Center;
MARY BERGHUIS, Warden of Earnest C. Brooks Correctional Facility;
PAUL KLEE, Warden of Gus Harrison Correctional Facility;
JOHN PRELESNIK, Warden of Richard A. Handlon Correctional Facility;
CATHLEEN STODDARD, Warden of Richard A. Handlon Correctional Facility;
CINDI S. CURTIN, Warden of Oaks Correctional Facility;
DAVID BERGH, Warden of Thumb Correctional Facility;
JEFFREY WOODS, Warden of Chippewa Correctional Facility;
ROBERT NAPEL, Warden of Marquette Branch Prison; and
KENNETH MCKEE, Warden of Bellamy Creek Correctional Facility,
Jointly and severally,

                        Defendants.


_____/

DEBORAH LaBELLE (P31595)
ANLYN ADDIS (P76568)
Attorneys for Plaintiffs
221 N Main St Ste 300
Ann Arbor, MI  48104
(734) 996-5620
deblabelle@aol.com
aaddis@sbcglobal.net

JENNIFER B. SALVATORE (P66640)
NAKISHA CHANEY (P65066)
EDWARD MACEY (P72939)
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.
Attorneys for Plaintiffs
101 N. Main Street, Ste. 555
Ann Arbor, Michigan 48104
(734) 663-7550
jsalvatore@nachtlaw.com
nchaney@nachtlaw.com
emacey@nachtlaw.com

MICHAEL L. PITT (P24429)
PEGGY GOLDBERG PITT (P31407)
CARY S. McGEHEE (P42318)
Pitt McGehee Palmer Rivers & Golden, PC
Attorneys for Plaintiffs
117 W 4th St Ste 200
Royal Oak, MI  48067
Phone: (248) 398-9800
mpitt@pittlawpc.com
ppitt@pittlawpc.com
cmcgehee@pittlawpc.com

---

## COMPLAINT AND JURY DEMAND

## INTRODUCTORY STATEMENT

1.      This proposed class action lawsuit seeks injunctive and declaratory relief and damages on behalf of children confined in adult prisons operated by the Michigan Department of Corrections (MDOC).  During the last three years, at least 500 children ranging in age from 14-17 ("youthful prisoners") have been incarcerated in MDOC's adult prisons for sentences of a year or more.

2.      During their imprisonment, these youth have been housed in cells with adult prisoners, and have been forced to shower, eat, recreate and work with adult prisoners without adequate supervision to ensure their safety and without regard to their status as children.  Male youthful prisoners incarcerated in the adult prisons are also subject to body searches and viewing by female staff while showering and performing basic bodily functions.

3.      The MDOC and Defendants are and were on notice that incarcerating youth in adult prisons without regard to their vulnerable child status subjects youthful prisoners to heightened and substantial risk of physical and sexual violence and abuse and sexual harassment at the hands of adult prisoners and prison staff.

4.      Placing children in adult prisons without regard to their youthful status and vulnerability has resulted in increased punishment and degrading treatment through the use of tasers, solitary confinement and deprivation of rehabilitative programming and educational services.

5.      Defendants' policy and practice of housing youthful and adult prisoners together without taking adequate steps to protect youth from a known harm constitutes deliberate indifference to their safety.

6.      Congress enacted the Prison Rape Elimination Act (PREA) a decade ago after recognizing the harm to youth placed in adult facilities.  PREA requires state prisons to keep any

1

prisoners under the age of 18, who are housed in adult facilities, separate by sight and sound from adult prisoners.

7.      As a result of Defendants' policies and practices, the proposed class, including Plaintiffs, have suffered and are at an imminent risk of suffering irreparable harm, including but not limited to physical injuries, sexual violence and abuse, severe emotional distress and mental trauma, degrading treatment, lengthened periods of incarceration, solitary confinement and deprivation of basic educational and rehabilitative services.

## JURISDICTION AND VENUE

8.      This is a civil action brought pursuant to 42 U.S.C. § 1983 and 18 U.S.C. § 1595, seeking injunctive and declaratory relief together with monetary damages against Defendants for violations of the Eighth and Fourteenth Amendments of the United States Constitution, the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1584, 1590, 1591, 1594 and 1595, together with violations of the conventions and treaties of which the United States is a signator and customary international law and standards.

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343(a)(3) and (4), which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, the Declaratory Judgment Act.  This Court has personal jurisdiction over the Defendants named herein as public officials of the State of Michigan sued in their official and individual capacities for violations of Plaintiffs' statutory and constitutional rights.  The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest and costs.

10.     Venue is proper in this Court as Defendants conduct their business across the State, including in the Eastern District of Michigan, and some of the named Plaintiffs are or were incarcerated in the Eastern District of Michigan during the relevant time periods.

## PARTIES

### A.    PLAINTIFFS

11.    Plaintiff representatives are citizens of the United States and at all relevant times were children imprisoned in facilities under the jurisdiction of the MDOC.  Plaintiffs bring this action on behalf of themselves and a class of youthful prisoners who are, were, or will be confined in adult prisons in Michigan and who have been or will be subjected to sexual and physical assaults and abuse, sexual harassment, and degrading treatment from adult prisoners and staff as a result of incarceration in adult prisons without adequate supervision, separation from adult prisoners, or treatment consistent with their status as children.  Two Plaintiffs currently under the age of 18 are represented by Anlyn Addis as their next friend pursuant to Federal Rule of Civil Procedure 17(c).  Plaintiffs seek injunctive and declaratory relief and damages for themselves and for members of the class.

### B.    DEFENDANTS

12.    All individual defendants are sued in their individual and official capacities.

13.    Defendant MDOC is a Department of the State of Michigan and with the Defendant Governor, is responsible for the care and custody of youthful prisoners incarcerated in prisons in the State of Michigan.  Defendant MDOC and Defendant Governor have the responsibility, authority and ability to remedy current and future conditions at facilities housing youthful prisoners that have given rise to the sexual and physical abuse and assaults, degrading treatment and deprivation of rights as set forth in this complaint.

14.    Defendant Rick Snyder is the Governor of the State of Michigan and is invested with executive power pursuant to Art. V, Section 1 of the Michigan Constitution.  Defendant Snyder, with the management of the Michigan Department of Corrections, is responsible for the care and custody of youthful prisoners in the State of Michigan, and has the responsibility,

3

authority and ability to remedy current and future conditions at facilities housing youthful prisoners that have given rise to and continue to pose a substantial risk of sexual and physical abuse and assaults, degrading treatment and deprivation of rights as set forth in this complaint.

15.     Defendant Daniel H. Heyns, ("Heyns") is the Director of the Michigan Department of Corrections.  His duties and responsibilities include a responsibility for developing and implementing policies and procedures for the operation and management of the Michigan Department of Corrections and its employees.  He is responsible for the care, custody and protection of prisoners under the jurisdiction of the Michigan Department of Corrections.

16.     Defendant Thomas Finco ("Finco") is the Deputy Director of the MDOC's Correctional Facilities Administration (CFA), and has served in that capacity since October 1, 2011.  Defendant Finco's duties and responsibilities include the operation of all correctional institutions in the MDOC system, including promulgating and administering MDOC's policies related to the placement and custody of individual prisoners at MDOC facilities.

17.     Defendant Dennis Straub ("Straub") was the Deputy Director of the CFA before October 1, 2011.  His duties and responsibilities included the promulgation and administration of MDOC policies, including custodial placement and the custody and protection of youthful prisoners at their respective facilities during his tenure.

18.     Defendant Randy Treacher ("Treacher") is the Chief Deputy Director of the CFA.  His duties and responsibilities include the supervision of Defendants Straub and Finco during their respective tenures.

19.     Defendants MDOC, Governor Snyder, Heyns, Finco, Straub and Treacher are collectively referred to in this action as "Policymaker Defendants."

20.     The individual Warden Defendants were, at all relevant times, wardens at MDOC facilities where the named Plaintiffs have been housed with adult prisoners and have been

4

subject to the harm and injuries set forth herein. At all relevant times the Warden Defendants were responsible for the training, assignment and supervision of staff at their respective facilities, as follows:

a. WILLIE SMITH, Warden of Carson City Correctional Facility, was and is responsible for the unlawful treatment and conditions involving JOHN DOE 5.

b. HEIDI WASHINGTON, Warden of Charles Egeler Reception and Guidance Center, was and is responsible for the unlawful treatment and conditions involving JOHN DOES 3, 6 and 7.

c. MARY BERGHUIS, Warden of Earnest C. Brooks Correctional Facility, was and is responsible for the unlawful treatment and conditions involving JOHN DOE 5.

d. PAUL KLEE, Warden of Gus Harrison Correctional Facility, was and is responsible for the unlawful treatment and conditions involving JOHN DOE 6.

e. JOHN PRELESNIK, Warden of Richard A. Handlon Correctional Facility, was and is responsible for the unlawful treatment and conditions involving JOHN DOES 1 and 6.

f. CATHLEEN STODDARD, Warden of Richard A. Handlon Correctional Facility, was and is responsible for the unlawful treatment and conditions involving JOHN DOES 1 and 6.

g. CINDI S. CURTIN, Warden of Oaks Correctional Facility, was and is responsible for the unlawful treatment and conditions involving JOHN DOE 2.

    h.  DAVID BERGH, Warden of Thumb Correctional Facility, was and is responsible for the unlawful treatment and conditions involving JOHN DOES 2, 3, 4 and 5.

    i.  JEFFREY WOODS, Warden of Chippewa Correctional Facility, was and is responsible for the unlawful treatment and conditions involving JOHN DOES 3 and 5.

    j.  ROBERT NAPEL, Warden of Marquette Branch Prison, was and is responsible for the unlawful treatment and conditions involving JOHN DOE 6.

    k.  KENNETH MCKEE, Warden of Bellamy Creek Correctional Facility, was and is responsible for the unlawful treatment and conditions involving JOHN DOE 1.

21.    The above-named wardens will be collectively referred to herein as the "Warden Defendants."

22.    In their capacity as wardens, Warden Defendants' duties and responsibilities include the training, assignment, supervision, discipline and investigation of correctional officers and MDOC employees.

23.    The Warden Defendants are also responsible for the custody, safety, protection, fair treatment and rehabilitation of the youthful prisoners in their facilities and for ensuring that the facilities housing youthful prisoners are operated according to proper correctional standards, statutes and/or laws to ensure the safety and protection of vulnerable populations, including Plaintiffs.

24.    The Warden Defendants are also responsible for developing procedures and implementing policies to prevent the sexual abuse and degrading treatment of youthful prisoners

and are also responsible for ensuring an adequate and effective mechanism for the safe and effective reporting of sexual and physical assaults and sexual harassment experienced by prisoners housed at their facilities.

25.     The Warden Defendants are responsible for ensuring that youthful prisoners under their care and supervision are not deprived of rehabilitative or educational opportunities or subjected to retaliation and/or increased punishment due to their vulnerable status as youth.

## CLASS ACTION ALLEGATIONS

26.     This action is brought by the named Plaintiffs on behalf of youthful prisoners who, since October of 2010, have been, are now, or will be hereafter incarcerated in adult correctional facilities under the jurisdiction of the Michigan Department of Corrections and who have been subjected to physical and sexual abuse, assaults, harassment and/or other degrading treatment by adult prisoners and/or MDOC custodial staff.

27.     The number of youth who have been subject to these violations of their rights while under the jurisdiction of the MDOC since 2010 exceeds one hundred children.  The number of class members is sufficiently numerous to make class action status the most practical method for Plaintiffs to challenge the policies, procedures and practices of Defendants that are a proximate cause of their ongoing abuse.

28.     There are questions of law and fact raised by the named Plaintiffs' claims common to, and typical of, those raised by the Class they seek to represent.

29.     Questions of law or fact common to the Class, without limitation, include:

      a.  Defendants' failure to properly house youthful prisoners, failure to separate youthful prisoners from adult prisoners in MDOC facilities, and failure to provide adequate supervision to safeguard this vulnerable population resulting in sexual abuse and physical violence by adult prisoners;

7

b.  Defendants' failure to properly supervise, train, monitor, discipline, and/or regulate prison staff and failure to properly house and protect this vulnerable population resulting in sexual abuse and physical violence by adult prisoners and prison staff;

c.  Defendants' ongoing failure to promulgate and implement proper policies and procedures to identify and house vulnerable youthful prisoners to safeguard their protection from harm from sexual abuse, solitary confinement and deprivation of rehabilitative opportunities;

d.  Defendants' failure to adequately protect youth from a known risk of sexual abuse from adult prisoners and properly supervise, train, and discipline prison staff in violation of Plaintiffs' constitutional, common law, and statutory rights.

30.    The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all Class members.

31.    Plaintiff Class representatives will fairly and adequately protect the interests of the Plaintiff class members.  Plaintiffs' counsel know of no conflicts of interest between the class representatives and absent class members with respect to the matters at issue in this litigation; the class representatives will vigorously prosecute the suit on behalf of the Class; and the class representatives are represented by experienced counsel.  Plaintiffs are represented by attorneys with substantial experience and expertise in complex and class action litigation involving issues of children, sexual assault, and/or prison conditions.  Plaintiffs' attorneys have identified and thoroughly investigated all claims in this action, and have committed sufficient resources to represent the Class.

32.    The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice.  Moreover, the prosecution of separate actions by individual members of the Class could result in inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

33.    Defendants have acted or failed to act on grounds generally applicable to all Plaintiffs, necessitating declaratory and injunctive relief for the Class.

## STATEMENT OF GENERAL FACTS

34.    The State of Michigan places children as young as fourteen years of age in adult prisons under the supervision of the MDOC.

35.     The MDOC has failed to separate youth under the age of 18 from adult prisoners, despite their obvious and substantial vulnerability to harm from adult prisoners.  The MDOC has maintained a policy and procedure of placing 17 year old youths directly in cells and housing units with adult prisoners, despite their obvious and substantial vulnerability to harm from adult prisoners.[1]

36.    The MDOC has failed to adequately separate or supervise youth aged 14-17 incarcerated with adult prisoners despite the promulgation of standards under the Prison Rape Elimination Act (PREA) requiring site and sound separation of youth under the age of 18 from adults.  42 U.S.C. § 15601 et seq; 28 CFR 115.14.

37.    PREA is a federal statute designed to address findings that youth are eight times more likely to be subjected to sexual violence and that youthful prisoners are five times more likely to be sexually assaulted in adult rather than juvenile facilities.  PREA requires that any

---

[1] Plaintiffs' Counsel has learned that in the weeks preceding filing of this complaint, some MDOC facilities have started to separate 17-year-olds from the adult population in some settings. The extent and scope of these efforts throughout the MDOC system is unclear.

youth under the age of 18 shall not be placed in a housing unit in which the youthful inmate will have sight, sound or physical contact with any adult prisoners or use of a shared day room or other common space, shower area, or sleeping quarters.

38.     Independent of the requirements of PREA, Defendants have failed to adequately consider youth and their obvious vulnerability in determining the proper placement, transfer, supervision and treatment of youth under their supervision.

39.     In contravention of PREA, MDOC's own policies, and/or standard correctional practices, Defendants have placed vulnerable youth, including Plaintiffs, in adult prisons without separation by sight and sound from adult prisoners, without adequate supervision during contact with adults, and without procedures to protect youth, including Plaintiffs, from sexual victimization so as to ensure their safety and well-being.

40.     Defendants' practice of using solitary confinement for the placement of youth, including Plaintiffs, without ensuring humane treatment, has failed to adequately protect Plaintiffs and constitutes a punishment for their vulnerability and/or reporting of abuse.

41.     Defendants, without adequate procedures, training or supervision, have subjected youth to cross-gender searches, pat-downs and viewings while showering and performing basic bodily functions without taking adequate steps to protect their safety, privacy and rights.

42.     Defendants have created and continued policies that fail to separate youthful and adult prisoners in showers, yard, programming, or eating areas, and fail to provide them with adequate supervision to prevent sexual victimization and assault.

43.     Defendants, despite their knowledge and the obvious and apparent risks of placing youth in adult prisons, have failed to implement and effectuate policies, procedures and mechanisms to deter sexual and physical abuse against Plaintiffs and other youth under their supervision.

44.    As a result of Defendants' acts and omissions in failing to safeguard vulnerable youth, including Plaintiffs, the plaintiffs in this case have all experienced some combination of sexual and physical abuse, harassment, and/or related violence from adult prisoners and/or staff in MDOC facilities in the last three years.

45.    Defendants have aided and abetted the sexual abuse and misconduct by adult prisoners and staff by failing to take adequate steps to prevent and deter the violations of Plaintiffs' rights, by, among other acts and omissions, failing to adequately train, supervise, investigate and discipline staff who violated Plaintiffs' rights.  Defendants' acts and omissions regarding screening, training, supervision, investigation and discipline surrounding the placement of youth in adult prisons and the sexual and physical abuse of these youths permitted and ratified the abusive behavior by adult male prisoners and by MDOC staff.

46.    In addition to the widespread sexual abuse and violence against youthful prisoners, Defendants themselves and/or through their agents, have created a prison environment that facilitates a system of sexual trafficking of youth, from which some Defendants and their agents benefited.  The facilitation and benefits of the system has taken different forms, including the following:

    a.    MDOC staff have failed to intervene in situations where they are aware of intended sexual assaults and have provided advice on how to perpetrate the assaults without detection.

    b.    MDOC staff are in total control of access to cells and prisoner placement and have allowed adult prisoners to have access to youthful prisoners for purposes of sexual abuse and assault.  Corrections officers have received direct benefits from adult prisoners in exchange for this access.

11

      c.  MDOC staff have facilitated adult prisoners' sexual abuse and trade of youthful prisoners in exchange for direct benefits and favors.

47.    Defendants also knew or should have known that their placement of children in adult prisons without adequate separation from adult prisoners or supervision together with a failure to properly train, regulate, supervise, monitor, discipline and adequately investigate complaints about MDOC staff would lead to sexual assaults, sexual harassment and violence against youthful prisoners, including Plaintiffs, housed in MDOC adult prisons.

48.    Defendants' mechanisms for addressing grievances through an administrative process are ineffective and futile for Plaintiffs' claims as Defendants do not provide an adequate or available system for Plaintiffs to exhaust their claims administratively.

49.    Plaintiffs are not allowed to file grievances challenging policies, procedures, placement, housing or custody, and Defendants do not provide an alternative administrative mechanism to exhaust the claims set forth in this Complaint.

50.    A grievance cannot be instituted except through a written form and Defendants and their agents have consistently failed to ensure that Plaintiffs are provided grievance forms; Defendants and their agents have routinely refused to process grievances; and/or Defendants and their agents have regularly failed to ensure responses to grievances, rendering any administrative process for Plaintiffs unavailable or futile.

51.    At all relevant times Plaintiffs were advised that a precondition to filing a grievance was consultation with the individual who was being grieved.  Since complying with this requirement in the context of Plaintiffs grieving staff and adult prisoners' criminal sexual conduct and abuse would place Plaintiffs in grave danger, Defendants' requirements have rendered the grievance system unavailable to Plaintiffs.

12

52. Defendants, by policy and practice, have created barriers to the grievance system rendering the administrative process effectively unavailable to youth, including Plaintiffs.

53. Moreover, Plaintiffs were and are routinely discouraged from using the grievance system as a mechanism for addressing individual assaults and mistreatments, by threats and intimidation by MDOC staff and other prisoners and by virtue of MDOC's own policies regarding grievances. MDOC's requirements for exhaustion are non-compliant with the Prison Rape Elimination Act and Defendants, and each of them, have been sufficiently on notice of the existence of sexual abuse, degrading treatment and retaliation against youth, including Plaintiffs, to allow Defendants the opportunity to take remedial actions prior to Plaintiffs filing this action.

54. Plaintiffs as a purported class of children, including non-prisoners and next friends, need not exhaust administrative remedies prior to bringing this action.

## STATEMENT OF FACTS RELATIVE TO EACH NAMED PLAINTIFF AND CLASS REPRESENTATIVE

**A.    JOHN DOE 1**

55. John Doe 1 is currently a prisoner at an adult prison under the jurisdiction of the MDOC.

56. John Doe 1 was incarcerated in an adult MDOC prison in early 2012 at age 17. Since that time, he has been housed in the Charles Egeler Reception and Guidance Center ("RGC"), the Richard A. Handlon Correctional Facility ("MTU"), and Bellamy Creek Correctional Facility ("IBC").

57. MTU Warden Defendant and Policymaker Defendants failed to separate John Doe 1 from adult prisoners despite his obvious vulnerability or take adequate precautions to protect him from assault and abuse.

13

58.    In the spring and summer of 2012, while at the Handlon facility, John Doe 1, on threat of physical violence, was repeatedly anally raped and forced to engage in oral sex with adult male prisoners.  The rapes occurred in his cell and in the shower.

59.    Over an extended period, corrections officers witnessed men cycling in and out of John Doe 1's cell, sexually assaulting him.  Several of the officers knew that his cellmate was selling access to John Doe 1.

60.    Adult prisoners exercised control over John Doe 1 by, among other things, forcing him to have sex with other adult prisoners.

61.    The sexual abuse, forced sex, and trafficking abuse of John Doe 1 was open and obvious to MDOC staff and his attempts to get help were rejected.

62.    John Doe 1 was also forced to provide sexual services to other prisoners in the showers, which were located next to the corrections officers' desk.

63.    John Doe 1 reported to a prison official that he was receiving threats, but he was refused protective custody.

64.    John Doe 1 was transferred to IBC after the assaults at Handlon.  There, he continued to face sexual threats and pressures from adult prisoners.

65.    On August 8, 2012, John Doe 1 was placed in solitary confinement.  John Doe 1 continued to be sexually harassed and threatened while in solitary confinement.

66.    John Doe 1 continues to be kept in a cell by himself, where he is deprived by the MDOC of access to necessary rehabilitative and educational programming and adequate medical and mental health treatment.

**B.    JOHN DOE 2**

67.    John Doe 2 is currently a prisoner at an adult prison under the jurisdiction of the MDOC.

14

68.     John Doe 2 was incarcerated in an adult MDOC prison in early 2011, when he was 16 years old.  Since that time, he has been housed in various facilities, including the Charles Egeler Reception and Guidance Center ("RGC"), the Thumb Correctional Facility ("TCF"), and Oaks Correctional Facility ("ECF").

69.     TCF Warden Defendant and Policymaker Defendants failed to separate John Doe 2 from adult prisoners or take adequate precautions to protect John Doe 2 from assaults and abuse.

70.     Shortly after his arrival at TCF in the Spring of 2012, John Doe 2 was brutally beaten and raped by his adult cellmate.

71.     After the rape, John Doe 2 experienced rectal bleeding, which was noted by medical staff at TCF.

72.     Despite the fact that MDOC prison officials at TCF knew or should have known of the rape and assault as evidenced by documented rectal bleeding, John Doe 2 was placed back in the same cell with his assailant.

73.     A MDOC staff member at TCF facilitated the abuse and assault of John Doe 2 by opening John Doe 2's cell to allow an adult prisoner in the cell to assault him.

74.     Despite the obvious vulnerability and sexual abuse of John Doe 2 at TCF at age 17, John Doe 2 was transferred without any protection or safeguards to another adult facility – ECF -- and placed in a cell with an adult male prisoner.

75.     ECF Warden Defendant and Policymaker Defendants failed to separate John Doe 2 from adult prisoners or take precautions to protect him from further assaults and abuse.

76.     At ECF, John Doe 2's adult cellmate sexually abused and harassed him by, among other actions, forcing John Doe 2 to shower while he watched him and masturbated.

15

77.     No precautions were taken by ECF staff to protect or ensure John Doe 2's safety, despite his obvious vulnerability and child status.

78.     In November of 2012, John Doe 2 was transferred to another cell in ECF and again placed with an adult prisoner without safeguards or supervision.

79.     There, John Doe 2 was physically assaulted and sexually harassed and abused. ECF staff, upon becoming aware of the assault, failed to protect John Doe 2 and punished him for reporting the abuse by issuing him a misconduct ticket and sending him to solitary confinement.

80.     Upon his release from solitary confinement, John Doe 2 was physically assaulted again with a blade, resulting in a scar across the face and marking him as a victim and as an ongoing target for other prisoners.

81.     After this incident, John Doe 2 was again placed in solitary confinement.  As a result of transfers and placements in solitary confinement, John Doe 2 has been deprived of rehabilitative and educational programming and suffered extreme mental and physical distress.

82.     Defendants have also failed to provide adequate medical and mental health treatment to John Doe 2.

## C.     JOHN DOE 3

83.     John Doe 3 is currently a prisoner in an adult prison under the jurisdiction of the MDOC.

84.     John Doe 3 was incarcerated in an adult MDOC prison early in the fall of 2010, when he was 16 years old.  He has also been housed in RGC, TCF, and Chippewa Correctional Facility ("URF").

85.     During his initial stay at RGC, John Doe 3 was housed in a unit surrounded by adult prisoners, where he was sexually harassed and threatened with assault.  The sexual

16

harassment was open and obvious to MDOC staff, who failed to take any steps to prevent the ongoing abuse.

86.    John Doe 3 was transferred to TCF without any safeguards to protect him from further abuse, despite his obvious vulnerability.  TCF Warden Defendant and Policymaker Defendants failed to separate John Doe 3 from adult prisoners or take adequate precautions to protect him from assaults and abuse.

87.    At TCF, John Doe 3 was not separated from adult prisoners and Defendants failed to take steps to ensure his safety.  John Doe 3 was raped and sexually abused by adult male prisoners on at least three separate occasions at TCF.

88.    The first assault occurred at TCF in or around the Winter of 2010/2011, when at the age of 16, adult prisoners came into John Doe 3's room and raped him.  John Doe 3 was sexually assaulted and abused throughout his stay at TCF in his cell and in the bathroom.

89.    MDOC female staff members at TCF grabbed and pulled John Doe 3's genitals and sexually abused and harassed John Doe 3 during body searches.  They also sexually harassed him while he was showering and/or performing basic bodily functions.

90.    MDOC staff at TCF repeatedly told John Doe 3 that he was going to get raped, and threatened to facilitate a rape as punishment for complaints.

91.    At the age of 17, Defendants transferred John Doe 3 to the Chippewa Correctional Facility ("URF"), without any safeguards for his protection despite his prior abuse and obvious vulnerability.

92.    URF Warden Defendant and Policymaker Defendants failed to separate John Doe 3 from adult prisoners or take adequate precautions to protect him from further assaults, abuse and harassment.  While a prisoner at URF, John Doe 3 was routinely sexually and physically

17

assaulted by correctional staff by having his genitals grabbed and pulled on during body searches.

93.     John Doe 3 was subjected to intense threatening and humiliating verbal sexual abuse by adult prisoners in the presence of MDOC staff at URF.  The MDOC staff witnessing these verbal assaults failed to take any steps to prevent the abuse and ratified the abuse by failing to punish the offenders.

94.     Defendants' failure to provide safe and secure housing to John Doe 3 and failure to provide adequate medical and mental health care has resulted in his loss of rehabilitative and educational programming, and severe emotional distress.

**D.     JOHN DOE 4**

95.     John Doe 4 is currently a prisoner in an adult prison under the jurisdiction of the MDOC.  As John Doe 4 is currently a minor, he is represented in this action by Anlyn Addis as his next friend.

96.     John Doe 4 was 16 years old when he was incarcerated at TCF.  TCF Warden Defendant and Policymaker Defendants failed to separate him from adult prisoners or take precautions to protect him from assaults or abuse or to protect his privacy.

97.     John Doe 4 has been subjected to physical and sexual assaults and abuse by MDOC staff since his incarceration in an adult prison.

98.     From late 2012 to early 2013, a female MDOC staff member repeatedly opened John Doe 4's cell for purposes of engaging in coerced sexual intercourse with him.

99.     The coerced sexual intercourse with John Doe 4 occurred in a cleaning closet in the Essex Unit of TCF.

100.     Female MDOC staff members have also grabbed and pulled on John Doe 4's genitals on multiple occasions.

18

101.    During his first year in prison, John Doe 4 was imprisoned in solitary confinement for over 130 days, at times on food and water restrictions and without adequate provisions for his youthful status.

102.    Defendants have failed and refused to provide a safe, secure and humane custodial environment, resulting in John Doe 4 being retained in solitary confinement because he fears for his safety.  He has been deprived of rehabilitative and educational programming and subjected to increased length of incarceration.

**E.    JOHN DOE 5**

103.    John Doe 5 is currently a prisoner in an adult prison under the jurisdiction of the MDOC.

104.    John Doe 5 was first incarcerated in an adult MDOC prison in September of 2011. Since that time, he has been housed in a number of facilities, including RGC, TCF, Earnest C. Brooks Correctional Facility ("LRF"), URF, and Carson City Correctional Facility ("DRF"). John Doe 5 was 16 years old when he was placed in an adult prison at TCF.  The TCF Warden Defendant and Policymaker Defendants failed to separate John Doe 5 from adult prisoners or take precautions to protect him from assaults and abuse.

105.    While incarcerated at TCF, John Doe 5 was sexually harassed, grabbed and had his buttocks and genitals slapped and groped by adult male prisoners.

106.    John Doe 5 was placed in a cell with an adult prisoner at TCF.  John Doe 5 was physically assaulted and anally raped by his adult cellmate.

107.    John Doe 5 was also subjected to humiliating and extreme sexual harassment, comments and sexual touching and abuse by MDOC female staff at TCF.

108.    A MDOC female staff member at TCF repeatedly performed body searches on John Doe 5 where she would grab his genitals in a sexual manner.

19

109.     John Doe 5, at age 17, was transferred to the LRF without any safeguards or protection from further abuse.  The LRF Warden and Policymaker Defendants failed to separate him from adult prisoners or take precautions to protect him from assaults and abuse despite the prior abuse and obvious vulnerability.

110.     In the fall/early winter of 2012, John Doe 5 was repeatedly raped in his cell by adult prisoners at LRF.  MDOC staff were aware of assaults and aware that adult male prisoners were paying John Doe 5's cellmate for access to John Doe 5 for purposes of sexually assaulting him.  Defendants failed to take any action to discipline the offending adult prisoners or intervene to prevent the sexual trafficking of John Doe 5.

111.     John Doe 5 requested protection at LRF but each request was ignored and/or denied.

112.     John Doe 5 was transferred to another adult prison while he was still a child and without any safeguards or protection despite his pleas.  While housed at URF, URF Warden Defendant and Policymaker Defendants again placed John Doe 5 in a cell with adult prisoners and failed to take adequate precautions to protect him from assaults and abuse.

113.     John Doe 5 was repeatedly sexually abused and sexually harassed at URF and physically assaulted when he attempted to resist.

114.     MDOC staff at URF were aware of the abusive conduct directed toward John Doe 5 by adult prisoners, refused to provide him with requested protective custody, and threatened him with disciplinary tickets.

115.     Defendants were aware of the vulnerability and abuse of John Doe 5, yet they transferred him to DRF with no safeguards or precautions in place to protect him from further abuse.

116.    At DRF, the DRF Warden and Policymaker Defendants failed to separate John Doe 5 from adult prisoners or take precautions to protect him from assaults and abuse.

117.    After transfer to DRF, John Doe 5 was again sexually abused, assaulted and raped by two adult male prisoners on separate occasions in a shower area.

118.    MDOC staff at DRF knew of the assaults and took no action to discipline the offending prisoners to protect John Doe 5 or provide medical or mental health treatment to him.

## F.    JOHN DOE 6

119.    John Doe 6 is currently a prisoner in an adult prison under the jurisdiction of the MDOC.

120.    John Doe 6 was incarcerated in an adult MDOC prison in September of 2012, at the age of 17.  He has been housed in RGC, MTU, Gus Harrison Correctional Facility ("ARF"), and Marquette Branch Prison ("MBP").

121.    Despite John Doe 6's obvious vulnerability and youth, the Warden and Policymaker Defendants at the various correctional facilities failed to separate John Doe 6 from adult prisoners or take precautions to protect him from assaults and abuse.

122.    During his incarceration at RGC in the fall of 2012, John Doe 6 was repeatedly sexually harassed and threatened by adult male prisoners.  The sexual harassment was open and obvious to MDOC staff.

123.    Despite knowledge of the sexual harassment, threats and John Doe 6's vulnerability, Defendants transferred John Doe 6 to MTU without any safeguards or protection. While at MTU, John Doe 6 repeatedly expressed concern to MDOC staff about sexual pressure and threats from other prisoners. He was then transferred to ARF.

124.    Upon his transfer to ARF, John Doe 6 was placed in adult housing and in late winter of 2013, was raped by an adult male prisoner in the laundry room at ARF.

125.    After he was transferred to MBP in the spring of 2013, John Doe 6 reported the rape occurring at ARF to MDOC officials.

126.    MDOC staff failed to provide adequate protection, mental health and medical treatment to John Doe 6 and failed to take steps to provide a safe and humane environment despite their knowledge of his abuse.

127.    At MBP, John Doe 6 has been housed for over five months in solitary confinement, where he continues to be sexually harassed, threatened, and told that he will be sold for sex on the yard.  John Doe 6 has refused to go back to the general population out of fear of additional rapes and has been punished with misconduct tickets for refusing to leave his solitary cell and return to general population.

128.    Defendants' failure to provide safe and secure housing to John Doe 6 has resulted in loss of rehabilitative and educational programming, severe emotional distress, and increased length of incarceration.

## G.    JOHN DOE 7

129.    John Doe 7 is currently a prisoner in an adult prison under the jurisdiction of the MDOC.  As John Doe 7 is currently a minor, he is represented in this action by Anlyn Addis, as his next friend.

130.    John Doe 7 was first incarcerated in an adult MDOC prison in the summer of 2013.

131.    John Doe 7 was 17 years old when he was incarcerated at RGC, where he was housed with adult male prisoners.  The RGC Warden and Policymaker Defendants failed to separate John Doe 7 from adult prisoners or take precautions to protect him from assaults and abuse.

132.    MDOC staff members acknowledged their awareness of his vulnerability and substantial risk of sexual assaults and abuse and yet took no steps to protect him or ensure his safety.

133.    In July of 2013, an adult male prisoner entered John Doe 7's cell at RGC and sexually harassed and assaulted John Doe 7.  When John Doe 7 called the RGC staff for help, he was further physically assaulted by the male prisoner.

134.    John Doe 7 was so fearful of future sexual and physical assaults that he confined himself to his cell, resulting in loss of rehabilitative programming and severe emotional distress.

## CLAIMS FOR RELIEF

### COUNT I
### Section 1983 – 8th Amendment
### (Against All Policymaker Defendants and Specific Warden Defendants Responsible for The Unlawful Conditions at Applicable Correctional Facilities)

135.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

136.    Warden Defendants knew or should have known that vulnerable youth, including the Plaintiffs, were and are at substantial risk of sexual and physical abuse, privacy violations and degrading treatment in adult prisons, and failed to adequately protect them.

137.    Warden and Policymaker Defendants' placement of vulnerable youth, including Plaintiffs, in adult prisons without separation from adult prisoners or adequate supervision and protection violates the prohibition against cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution.  Defendants' action deprived Plaintiffs and all similarly-situated prisoners of the equal protection of laws under the Fourteenth Amendment of the United States Constitution.

23

138.    The deprivation of constitutional rights alleged in this complaint are the direct result of official policy, custom and practices of Defendants and each of them.

139.    Policymaker and Warden Defendants' failure to adequately train, supervise and/or institute and implement adequate policies and procedures for placement and protection of vulnerable youth constitutes deliberate indifference to Plaintiffs' safety and bodily integrity in violation of their rights under the Eighth Amendment.

140.    Warden Defendants are individually liable for the unconstitutional conditions at their correctional facilities because they and/or their agents: 1) participated in creating and carrying out the unconstitutional polices that caused the harm to each John Doe; 2) failed to take necessary steps to ensure the safety of Plaintiffs; and 3) implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of offending MDOC staff.

141.    Policymaker Defendants also had sufficient knowledge, including through the statutes and regulations established in PREA and through MDOC's internal policies and correctional knowledge, to know that youthful prisoners, including Plaintiffs, were and are at substantial risk of harm in adult prisons, and failed to adequately protect them.

142.    Warden Defendants' unconstitutional policy and practice of placing Plaintiffs in solitary confinement and failing to provide alternative safe and secure housing free of sexual and physical violence constitutes cruel and unusual punishment.

143.    Warden and Policymaker Defendants' policy and practice of housing youthful prisoners in adult prisons with adult prisoners and failing to prevent and remedy the resulting sexual abuse, violence and degrading treatment experienced by Plaintiffs constitutes deliberate indifference to and the unnecessary and wanton infliction of pain and suffering, and degradation and psychological injury on the Plaintiffs, without penological justification.

## COUNT II

### Section 1983 – 4th and 14th Amendment Due Process and Privacy Violations
### (Against All Policy-Maker Defendants and Specific Warden Defendants Responsible for the Unlawful Conditions at the Applicable Correctional Facilities)

144.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein. Policymaker and Warden Defendants by their unconstitutional policies have violated and continue to violate Plaintiffs' rights under the Fourth and Fourteenth Amendments by failing to separate youthful prisoners from adult prisoners where there is significant risk of sexual and other violence.

145.    The Policymaker Defendants are individually liable for the unconstitutional conditions at the correctional facilities and are responsible for establishing the unconstitutional polices that caused the harm to each Plaintiff.

146.    The individual Warden Defendants are individually liable for the unconstitutional conditions at their respective correctional facilities and are responsible for establishing the unconstitutional polices that caused the harm to each John Doe housed in their facility.

147.    Policymaker Defendants had sufficient knowledge, including through the statutes and regulations established in PREA and through MDOC's own internal policies and correctional knowledge, to know that youthful prisoners, including Plaintiffs, were and are at substantial risk of harm, and failed to adequately protect them.

148.    Warden Defendants had actual knowledge that Plaintiffs were and are at high risk, and failed to adequately protect them.

149.    Policymaker and Warden Defendants' unconstitutional policy of housing youthful prisoners with adult prisoners facilitated and encouraged the sexual assaults, harassment, degrading treatment and privacy violations of the youthful prisoners by employees of MDOC and adult prisoners.  This official policy, custom, pattern or practice has deprived Plaintiffs of

their constitutional right to bodily integrity and right to privacy without due process of law in violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

150.    Warden Defendants' unconstitutional policy of placement of Plaintiffs in solitary confinement and failure to provide alternative safe and secure housing without being subject to sexual and physical violence also constitutes a violation of due process.

151.    The deprivation of constitutional rights and the injuries and harm to Plaintiffs alleged in this Complaint are the direct result of official policy, custom and practices of Policymaker and Warden Defendants.

**COUNT III**
**Section 1983-14th Amendment Equal Protection –**
**(Against All Policymaker Defendants and Specific Warden Defendants Responsible for the Unlawful Conditions at the Applicable Correctional Facilities)**

152.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

153.    Defendants' failure to separate youthful and adult prisoners and the resulting sexual abuse and violence experienced by Plaintiffs constitutes a violation of Plaintiffs' and members of Plaintiff Classes' right to equal protection under the Fourteenth Amendment of the United States Constitution.  Defendants' policies in this regard are not substantially related to an important and legitimate governmental interest.

154.    Defendants' failure to prevent and remedy the sexual abuse, harassment, degrading treatment, retaliation and ongoing violations of Plaintiffs' privacy violates Plaintiffs' rights to equal protection of the law under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983 and customary international law standards.

155.    Defendants' placement of children in adult facilities, their failure to remedy the resultant sexual assaults and sexual harassment of youthful prisoners, and their ratification of the hostile conditions and treatment of youthful prisoners constitutes discrimination based on age. This inferior treatment is not substantially related to an important and legitimate governmental interest and violates Plaintiffs' rights to equal protection under the law and 42 U.S.C. § 1983.

156.    The placement of seventeen year old Plaintiffs in cells with adult prisoners and Defendants' failure to treat these youth consistent with their status as minor children deprived them of their right to equal protection under the law in violation of the Fourteenth Amendment of the United States Constitution.

157.    The denial to Plaintiffs, and to those similarly situated, of the right to equal opportunity for rehabilitation and the subjection of the Plaintiffs and those similarly situated to a hostile prison environment constitutes prohibited discrimination based on their age in violation of the Fifth and Fourteenth Amendments to the United States Constitution and customary international law standards.

158.    At all times relevant to this action, Defendants and each of them were acting under color of law and, in doing so, deprived Plaintiffs and all similarly-situated prisoners of the equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution, and under customary international law.

## COUNT IV
### Sex Trafficking of Children Under 18 or by Force, Fraud or Coercion
### 18 U.S.C. § § 1591 and 1594
### (Against Warden Defendants Prelesnik, Stoddard and Berghuis for damages and against all Defendants for Injunctive Relief)

159.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

160.    During all relevant time periods, Warden Defendants Prelesnik and Stoddard acted as Wardens at Handlon Correctional Facility.

161.    During all relevant time periods, Warden Defendant Berghuis acted as Warden at Earnest C. Brooks Correctional Facility.

162.    Plaintiffs John Doe 1 and John Doe 5 seek damages against Warden Defendants Prelesnik, Berghuis and Stoddard because they and/or their agents facilitated and participated in creating an environment that resulted in the unlawful sex trafficking of vulnerable children, including Plaintiffs.

163.    All Plaintiffs and Class Members seek broad injunctive relief against all Defendants to enjoin them from maintaining a prison system whereby vulnerable prisoners, including Plaintiffs, can be used in sex trafficking activities like those occurring at MTU and LRF within Michigan's prisons.

164.    Human trafficking, which includes sex trafficking and involuntary servitude, is a modern form of slavery in violation of 22 U.S.C. § 7101(b)(1).

165.    Consistent with its commitment to end human trafficking (which encompasses, among other things, the sale or trade of children for sex), in 2000 Congress passed the Trafficking Victims Protection Reauthorization Act (TVPA), 22 U.S.C. § 7101, *et seq.*

166.    The United States has also signed and ratified (with reservations) the Protocol to Prevent, Suppress and Punish Trafficking in Persons, Especially Women and Children.  Pursuant to Article 6 of the Protocol, the United States agreed that it would protect to the extent possible the privacy and identity of trafficking victims; take into account the age of trafficking victims, in particular the special needs of children with respect to housing, education and care; endeavor to provide for the physical safety of trafficking victims; and ensure that its domestic legal system

28

contains measures that offer trafficking victims the possibility of obtaining compensation for damages suffered.

167.    Youthful prisoners, including Plaintiffs, have been trafficked, threatened with trafficking or are potential targets for sex trafficking within the MDOC system where youthful and adult prisoners are housed together, in violation of 22 U.S.C. § 7102(9) and (10).

168.    Warden Defendants Prelesnik, Stoddard and Berghuis and/or their agents knew or should have known of Plaintiffs' victimization, threatened victimization and risk of victimization through sex trafficking.

169.    Warden Defendants Prelesnik, Stoddard and Berghuis and/or their agents knew or should have known that vulnerable prisoners are trafficked as part of a larger, institution-wide barter system that involves, among other things, the exchange of contraband property, privileges and/or benefits for sex with child prisoners.

170.    Warden Defendants Prelesnik Stoddard and Berghuis and/or their agents facilitated the prison bartering and sex trafficking of youth, including Plaintiffs John Doe 1 and John Doe 5,  through a variety of means, including, but not limited to:

      a.  exploiting and supporting a prison hierarchy to increase institutional control;

      b.  housing vulnerable prisoners and victims with adult prisoners and known offenders;

      c.  failing to investigate and remedy reported and/or obvious abuses;

      d.  punishing victims who defend themselves, resist being trafficked or assaulted, or insist upon remaining in protective conditions with misconduct tickets, solitary confinement, gassings and other punitive measures;

      e.  depriving victims of meaningful, non-punitive redress;

    f.   failing to investigate suspected or known staff misconduct or involvement in the prison barter system, which includes the commercial sex trade of youthful and other vulnerable prisoners;

    g.   moving youthful prisoners away from their home communities and depriving them of their support systems; and

    h.   permitting a physical and cultural environment that supports and permits sex trafficking of vulnerable persons.

171.   Warden Defendants Prelesnik, Stoddard and Berghuis and/or their agents and co-conspirators receive value from the prison bartering and sex trafficking system by among other things:

    a.   increased institutional control over prisoners by, among other means, allowing prisoner groups to establish and maintain a controlled system of sex in the institution, using implicit and explicit threats of exposing John Doe 1 and John Doe 5 and potentially other Class Members to situations in which they might get raped as a means of encouraging compliance;

    b.   cost savings through the failure to implement or take preventative measures, investigate reports, and provide rehabilitative services to victims; and

    c.   direct financial benefits to individual guards through receiving kickbacks and favors for taking no steps to prevent or intervene in the trafficking of youth including Plaintiff John Doe 1 and John Doe 5.

172.   Adult male prisoners harbored, recruited, transported, obtained and/or provided youth prisoners, including John Doe 1 and John Doe 5, to other adult male prisoners for rape and commercial sexual services within Michigan's prisons.

173.    Prison rape has a recognized significant effect on interstate commerce.  42 U.S.C. § 15601(15).

174.    The harboring, recruiting, transporting, obtaining, raping and/or providing youthful prisoners, including Plaintiffs John Doe 1 and John Doe 5, was in or affected interstate or foreign commerce.

175.    Warden Defendants Prelesnik, Stoddard and Berghuis and/or their agents directed, assisted, conspired and acted in concert with the offending prisoners to create and enforce a system of sex trafficking in violation of 18 U.S.C. §§ 1591 and 1594.

176.    Warden Defendants Prelesnik, Stoddard and Berghuis and/or their agents benefitted and received value from participation in a venture that engaged in sex trafficking with knowledge, or in reckless disregard of the fact that force, fraud or coercion were used to compel the victim to perform a commercial sex act, or with knowledge that the victim was under the age of 18, in violation of 18 U.S.C. § 1591.

177.    Warden Defendants Prelesnik, Stoddard and Berghuis and/or their agents knowingly benefitted and received value from participation in a venture that Defendants and/or their agents and co-conspirators knew or should have known engaged in sex trafficking within the meaning of 18 U.S.C. § 1595.

## COUNT V
## TREATIES & CUSTOMARY INTERNATIONAL LAW
### (Against Defendants Governor and MDOC)

178.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

179.    MDOC's placement of children in adult prisons violates Arts. VII and XXV of the American Declaration of the Rights and Duties of Man, which the United States as a member of the Organization of American States, is bound by.

31

180. Incarcerating children with adults and the placement of children in solitary confinement also violates Art. 37(c) of the Convention on the Rights of the Child and Articles 4, 7, 8, 10, 14, 24 and 26 of the International Covenant on Civil and Political Rights (ICCPR), a treaty signed and ratified by the United States.

181. MDOC's current and continuing failure to afford youth, including Plaintiffs, a safe and secure custodial environment without resorting to solitary confinement and without regard to their status as children, constitutes punishment with no legitimate penological justification, and as such constitutes cruel, inhuman or degrading treatment or punishment in violation of customary international law as reflected inter alia in the Universal Declaration on Human Rights, the ICCPR and the U.N. Convention on the Rights of the Child, which extend special measures of protection to children and prohibit the placement of children in adult prisons and solitary confinement and other forms of cruel, inhuman or degrading treatment or punishment.

182. Defendants are bound by the treaties of the United States and customary international law, which are actionable pursuant to 42 U.S.C. § 1983 in that customary international law has been held, since the Constitution's adoption, to be part of the laws of the United States.

183. Defendants are individually liable for all of the injuries and damages sustained by Plaintiffs and Class members arising out of the housing of youthful and adult prisoners together in violation of Arts. VII and XXV of the American Declaration of the Rights and Duties of Man and Art. 37(c) of the Convention on the Rights of the Child and Articles 4, 7, 8, 10, 14, 24 and 26 of the International Covenant on Civil and Political Rights (ICCPR).

## DAMAGES

184.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

185.    The acts, omissions and policies of Defendants constituting violations of Plaintiffs' and Plaintiff class members' constitutional, statutory and common law rights were and are a proximate cause of Plaintiffs' damages.

186.    As a result of Defendants' acts, omissions and policies, the Plaintiff class representatives and the Plaintiff class members, individually and as a class, have suffered severe emotional and psychological injuries, physical injuries and damages, loss of freedom and loss of education, employment and rehabilitation opportunities and privileges and income.

187.    The physical and emotional injuries inflicted upon Plaintiffs and the class were willful, wanton, cruel and the result of intentional or deliberately indifferent conduct entitling Plaintiffs and the Class to punitive damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

    a.    Assert jurisdiction over this action;

    b.    Certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Plaintiff classes and designate the harmed Plaintiffs as representatives of the classes and their counsel of record as Class Counsel;

    c.    Issue a Permanent Injunction prohibiting Defendants from subjecting Plaintiffs to policies and practices that violate their constitutional, statutory rights, and common law rights;

d. Order appropriate relief to remediate prison conditions such that youthful prisoners sentenced to terms of imprisonment in Michigan prisons are housed in a safe environment free of sexual assaults, sexual harassment and physical violence perpetrated by adult prisoners and/or staff;

e. Provide adequate medical and mental health treatment to remediate the ongoing harm to the Plaintiffs and the Plaintiff class;

f. Order appropriate relief to effectuate compliance with Arts. VII and XXV of the American Declaration of the Rights and Duties of Man and Art. 37(c) of the Convention on the Rights of the Child and Articles 4, 7, 8, 10, 14, 24 and 26 of the International Covenant on Civil and Political Rights (ICCPR);

g. Order appropriate relief to effectuate compliance with 18 U.S.C. §§ 1584, 1590 and 1594;

h. Order appropriate relief to effectuate compliance with 22 U.S.C. § 7101, *et seq*.

i. Declare unconstitutional Defendants' housing of youthful prisoners with adult prisoners;

j. Declare unconstitutional the housing of youth in solitary confinement;

k. Award damages to Plaintiffs and Class Members for harm caused by Defendants' unconstitutional policies, unconstitutional acts and violations of law, including punitive damages where appropriate;

l. Award damages to youth including Plaintiffs John Doe 1 and John Doe 5 against Warden Defendants Prelesnik, Stoddard and Berghuis for facilitating and participating in sex trafficking in violation of 18 U.S.C. § § 1591 and

34

1594 and the prohibition against sexual servitude 18 U.S.C. §§ 1584 and 1590.

m. Award the reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and costs; and

n. Grant such other and further declaratory and equitable relief as the Court deems appropriate, just and proper to protect Plaintiffs from further harm.

## **DEMAND FOR TRIAL BY JURY**

NOW COME Plaintiffs by and through their counsel and hereby demand a trial by jury as to all those issues so triable as of right.

Respectfully submitted,

**/S/DEBORAH LaBELLE_____**
DEBORAH LaBELLE (P31595)
ANLYN ADDIS (P76568)
221 N Main St Ste 300
Ann Arbor, MI  48104
(734) 996-5620
deblabelle@aol.com
aaddis@sbcglobal.net

**/S/MICHAEL L. PITT_____**
MICHAEL L. PITT(P24429)
PEGGY GOLDBERG PITT (P31407)
CARY S. McGEHEE (P42318)
Pitt McGehee Palmer Rivers & Golden PC
117 W 4th St Ste 200
Royal Oak, MI  48067
Phone: (248) 398-9800
mpitt@pittlawpc.com
ppitt@pittlawpc.com
cmcgehee@pittlawpc.com

**/S/JENNIFER B. SALVATORE_____**
JENNIFER B. SALVATORE (P66640)
NAKISHA CHANEY (P65066)
EDWARD MACEY (P72939)
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.
Attorneys for Plaintiffs
101 N. Main Street, Ste. 555
Ann Arbor, Michigan 48104
(734) 663-7550
jsalvatore@nachtlaw.com
nchaney@nachtlaw.com
emacey@nachtlaw.com

36