UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3;
JOHN DOE 5; JOHN DOE 6; and next friends
of minors JOHN DOE 4 and JOHN DOE 7, on
behalf of themselves and a class of all others
similarly situated,                           Civil Action No. 13-14356
                                              HON. ROBERT H. CLELAND
                                              MAG. JUDGE R. STEVEN WHALEN
                    Plaintiffs,
v.

MICHIGAN DEPARTMENT OF
CORRECTIONS (MDOC), et al.,

                    Defendants.
_____/

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

The Plaintiff prisoners in this case are seven individuals under the age of 18 who allege that they were sexually assaulted and/or harassed by adult prisoners and guards while confined in adult correctional institutions run by the Michigan Department of Corrections ("MDOC"). The United States respectfully submits this Statement of Interest in response to Defendants' Partial Motion for Summary Judgment as to Plaintiffs' Claim for Prospective Injunctive Relief (ECF No. 47), to bring the Court's attention to the scope and applicability of the Prison Rape Elimination Act of 2004 ("PREA"), 42 U.S.C. § 15601 et seq., to juveniles confined in adult facilities.

### Interest of the United States

The United States files this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General to attend to the interests of the United States in any case pending

in federal court.[1]  Plaintiffs in this case allege, among other things, that 1) the MDOC places youth in adult prisons without separating them from adult prisoners or providing adequate supervision, and 2) this practice subjects the youth to harm in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  Compl. at ¶ 137 (ECF No. 1).

The United States, acting through the Civil Rights Division of the U.S. Department of Justice, has an interest in this case because it implicates the application of the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997a ("CRIPA").  CRIPA authorizes the Attorney General to investigate conditions of confinement in correctional facilities and bring a civil action against a State or local government that, pursuant to a "pattern or practice" of conduct, "is subjecting persons residing in or confined to an institution . . . to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."  42 U.S.C. § 1997(a).

The United States has a broad interest in ensuring that conditions of confinement in state and local correctional facilities are consistent with the Constitution and federal law.  The Division has previously exercised the United States' authority under CRIPA to address issues similar to those present in this case, including sexual abuse in confinement facilities and the treatment of juveniles in adult prisons and jails.[2]

---

[1] The full text of 28 U.S.C. § 517 is as follows: "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

[2] *See generally* Letter from Jocelyn Samuels, Acting Assistant Attorney General, to Robert Bentley, Governor of Alabama, Jan. 17, 2014, available at http://www.justice.gov/crt/about/spl/documents/tutwiler_findings_1-17-14.pdf (concluding that administrators at the Julia Tutwiler Prison for Women failed to keep women prisoners safe from harm due to sexual abuse and harassment from correctional staff);  Letter from Thomas E. Perez, Assistant Attorney General, to Samuel Brownback, Governor of Kansas, Sept. 6, 2012, available at http://www.justice.gov/crt/about/spl/documents/topeka_findings_9-6-12.pdf (concluding that administrators at the Topeka Correctional Facility fail to protect women prisoners from harm due to sexual abuse and misconduct); Letter from Thomas E. Perez, Assistant Attorney General, to Andrew J. Spano, Westchester Cnty. Exec., Nov. 19, 2009, http://www.justice.gov/crt/about/spl/documents/Westchester_findlet_11-19-09.pdf (finding that inmates at the Westchester County Jail are not adequately protected from harm, and that juveniles incarcerated in the jail are not

The Department of Justice also has an interest in ensuring that all correctional facilities comply with PREA regulations. Congress enacted PREA to address the high incidence of sexual assault occurring in prisons and jails across the country. Congress found that the prevalence of sexual abuse "involves actual and potential violations of the United States Constitution," and concluded that national standards were necessary to prevent, detect, and respond to such abuse. *See* 42 U.S.C. § 15601(13). The PREA statute conferred authority on the Department of Justice to promulgate those standards. *Id.* at § 15607. The final standards, published in the Federal Register in June of 2012, reflect the work of a cross-section of Department of Justice officials, including representatives from the Civil Rights Division, the Federal Bureau of Prisons, the Executive Office of United States Attorneys, and the Office of Justice Programs, among others. *See* Final Rule, National Standards to Prevent, Detect, and Respond to Prison Rape, 77 Fed. Reg. 37106, 37111 (June 2012). The Department of Justice, therefore, has a heightened interest in any matter involving the interpretation of PREA and its implementing regulations.

Accordingly, the United States submits this Statement of Interest to clarify the scope and applicability of PREA.[3] In particular, the United States wishes to respond to two statements made by Defendants in their Partial Motion for Summary Judgment as to Plaintiffs' Claim for Prospective Injunctive Relief and Motion to Dismiss as to Plaintiffs' Claims Under International Law (ECF No. 47) ("Defendants' Motion"): 1) that PREA does not apply to state-run correctional institutions, and 2) that changed facts involving Michigan's self-reported

---

adequately separated from adult offenders); *see also* Order Approving Consent Judgment and Certifying Class Settlement Class, *Jones v. Gusman*, No. 12-cv-859, June 6, 2013 (ECF No. 465) (approving remedies to benefit New Orleans Parish jail inmates, including juveniles awaiting trial on adult charges, in a facility plagued by violence, including sexual violence, inadequate medical and mental healthcare, and deplorable physical surroundings).

[3] The United States also has an interest in other allegations raised in the Complaint, but does not address those now because they are not raised in Defendants' current Motion for Summary Judgment. This interest includes allegations of inappropriate use of isolation on juveniles to either keep them safe from further abuse or to punish them for reporting abuse.

3

compliance with one PREA requirement -- sight and sound separation -- moots Plaintiffs' claims for prospective injunctive relief. The United States does not take a position on the truth of Plaintiffs' allegations or Defendants' factual assertions in their pleadings, but rather submits this Statement to clarify the reach of PREA and its implementing regulations and to refute Defendants' apparent misinterpretations of federal law.

### Factual and Procedural Background

On October 15, 2013, seven plaintiffs, proceeding under "John Doe" pseudonyms, filed a federal complaint[4] against MDOC on behalf of themselves and a proposed class consisting of "youthful prisoners who are, were, or will be confined in adult prisons in Michigan and who have been or will be subjected to sexual and physical assaults and abuse, sexual harassment, and degrading treatment from adult prisoners and staff as a result of incarceration without adequate supervision, separation from adult prisoners, or treatment consistent with the status as children." Compl. ¶ 11. The complaint alleges that the seven John Does each experienced sexual assault and harassment at the hands of prisoners and/or MDOC staff during their confinement in MDOC facilities. More specifically, the complaint alleges that MDOC was aware of the risk each youthful prisoner faced, yet still failed to separate them from adult prisoners and otherwise take steps to protect them from assault and abuse. *See generally Id.* ¶¶ 57-134. The complaint also alleges that John Does 1, 2, 4, 6, and 7 were subjected to prolonged periods of solitary confinement, either as punishment for reporting sexual abuse or to keep them safe from future assaults.[5] *Id.* ¶¶ 65-66, 79, 81, 101, 127, and 134.

---

[4] Plaintiffs also filed a complaint in state court, based on the same set of facts, alleging violations of state civil rights law. *See* Compl., *Doe v. MDOC, et al.*, No. 13-1196-CZ (Washtenaw Cir. Ct. 2013).

[5] As noted above in Footnote 3, Defendants' Motion does not address Plaintiffs' allegations regarding prolonged solitary confinement. Accordingly, the United States will not comment on these allegations in this Statement of

Defendants' answer asserts that youthful offenders in adult facilities "do not perceive themselves to be at imminent risk of physical and sexual assault," Answer at ¶ 7 (ECF No. 36); that youthful offenders are currently housed separately from adult offenders, *id.* at ¶ 34; and that "[w]hile sight and sound are recommendations under PREA such separation is not required in order to prevent physical contact between prisoners of different age groups," *id.* at ¶ 6. Defendants' current motion (ECF No. 47) argues, *inter alia*, that MDOC's self-reported compliance with PREA's sight and sound separation requirement moots Plaintiffs' prayer for injunctive relief that juveniles imprisoned in MDOC facilities be "housed in a safe environment free of sexual assaults, sexual harassment, and physical violence perpetrated by adult prisoners and/or staff." *See* Defendants' Motion at 31 (citing Compl. at 36, ¶ (d)).

## Discussion

State correctional facilities, like those operated by Defendants, are subject to both the Constitution *and* the PREA standards to protect prisoners from harm, including sexual abuse. Noncompliance with the PREA standards puts a State at risk of loss of certain federal funds. Plaintiffs in this case allege that they were and are placed at an unconstitutional risk of harm due to Defendants' failure to keep them safe from adult prisoners and MDOC correctional officers. In response, Defendants argue: 1) that PREA does not apply to states in the first place, Defendants' Motion at 14, but 2) the "alleged risk" of harm to youthful offenders "was rendered moot when the MDOC adjusted its housing practice regarding youthful prisoners" in line with PREA to keep youthful offenders separate from adults. Defendants' Motion at 31.

Despite MDOC's assertion that "PREA is a federal statute that applies to federal prisoners," Defendants' Motion at 14, PREA and its implementing regulations apply to all state-

---

Interest, except with regards to the obligations imposed on Defendants under PREA to keep youth separate from adults without using isolation, unless as a last resort.

5

operated confinement facilities such that failure to comply with them puts a state at risk of losing certain federal funds. The PREA regulations are clear: "The standards contained in this final rule apply to facilities operated by, or on behalf of, State and local governments and the Department of Justice." *See* 77 Fed. Reg. at 37107. *See* 42 U.S.C. § 15607(c); 77 Fed. Reg. at 37107.

Notably, compliance with the PREA standards does not equal compliance with the Constitution. *See* 77 Fed. Reg. 37107 ("The standards are not intended to define the contours of constitutionally required conditions of confinement. Accordingly, compliance with the standards does not establish a safe harbor with regard to otherwise constitutionally deficient conditions involving inmate sexual abuse."). Although compliance with the PREA standards may assist prison officials in meeting their constitutional obligation to keep prisoners safe and free from violence, compliance with the standards does not guarantee that such obligations are met in full. Sight and sound separation may be just one necessary piece in the larger puzzle of deciding how to keep youthful offenders safe when incarcerated in adult facilities. To meet the State's constitutional obligations, many more additional steps may be necessary.

Defendants' argument about the effect of its unverified, self-reported compliance with PREA standards is unclear. Defendants state that "MDOC's pre-lawsuit policy change relative to the housing of its youthful prisoners so that it is in compliance with PREA standards substantially altered the facts" such that the "appropriate inquiry, therefore, is whether the changes in factual circumstances have mooted the Plaintiffs' claims for prospective injunctive relief." Defendants' Motion at 31. The United States takes no position regarding whether Defendants have modified any of their practices to meet the PREA regulations' sight and sound separation requirements or any other PREA standards. As a matter of law, however, if

6

Defendants are arguing that compliance with any or all of the PREA standards moots a constitutional claim, that is incorrect. Compliance with PREA's sight and sound separation requirement – or with any or all PREA requirements, for that matter – does not render moot constitutional claims for failure to reasonably protect prisoners from sexual assault and other serious harm. As noted above, the PREA regulations do not constitute the constitutional floor, and compliance with the standards does not absolve jurisdictions of liability for any claim of unconstitutional conditions. Rather, the regulations are aimed at 1) preventing, detecting, and responding to incidents of sexual abuse in confinement facilities, and 2) fostering a cultural change within such facilities, by promoting policies and procedures that focus on combating sexual abuse. 77 Fed. Reg. at 37106-37107. Accordingly, states have dual obligations of providing constitutional conditions of confinement and of complying with PREA standards (if they do not wish to risk loss of federal funds).

      Finally, it is worth noting that Plaintiffs' prayer for relief does not merely request sight and sound separation between youthful offenders and adults. Even if the Defendants currently provide separation in line with PREA (according to pleadings in both the federal and state actions, it remains in dispute whether or not this is the case), Plaintiffs' prayer for relief is much broader than mere compliance with PREA. Plaintiffs request this Court to "remediate prison conditions," broadly stated, so that youth confined in MDOC facilities are "housed in a safe environment free of sexual assaults, sexual harassment, and physical violence perpetrated by adult prisoners and/or staff." Compl. at 36, ¶ (d). Although sight and sound separation may be an important part of that, additional changes to MDOC policy and procedure may be needed, if Defendants are found liable on Plaintiffs' constitutional claims.

**Conclusion**

The allegations raised in the complaint suggest serious deficiencies in how MDOC provides for the safety and security of juveniles in its care. Although the United States does not take a position on the validity of those claims, it is in the interest of the United States to ensure that federal law is properly interpreted and applied to federal cases. For that reason, the United States submits this Statement of Interest to clarify for the Court that the PREA regulations unequivocally apply to state-operated correctional facilities as a predicate for eligibility for certain federal grants, and that state-operated correctional facilities retain a separate and additional obligation to comply with constitutional standards regarding protection from sexual assault and other harm.

Date: March 20, 2014

    Respectfully submitted,

    JOCELYN SAMUELS
    Acting Assistant Attorney General
    Civil Rights Division

    ROY L. AUSTIN, JR.
    Deputy Assistant Attorney General
    Civil Rights Division

    JONATHAN M. SMITH
    Chief
    Civil Rights Division
    Special Litigation Section

    LAURA L. COON
    Special Litigation Counsel
    Civil Rights Division

    _____/s/_____
    SHARON BRETT
    Trial Attorney

Special Litigation Section
Civil Rights Division

U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 353-1091
E-mail: Sharon.Brett@usdoj.gov

BARBARA L. McQUADE
United States Attorney

_____/s/_____
SUSAN K. DeCLERCQ (P60545)
Assistant U.S. Attorney
Eastern District of Michigan
211 West Fort Street, Ste. 2001
Detroit, Michigan 48226
(313) 226-9149

Attorneys for the United States

**CERTIFICATION OF SERVICE**

I hereby certify that on March 20, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

I further certify that I have mailed by U.S. mail the paper to the following non-ECF participants:

None.

*/s/ Susan K. DeClercq*
SUSAN K. DeCLERCQ
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI  48226
Phone:  (313) 226-9149
E-mail: susan.declercq@usdoj.gov
(P 60545)