UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE 1; JOHN DOE 2, JOHN
DOE 3, JOHN DOE 5; JOHN DOE 6;
and next friends of minors JOHN
DOE 4 and JOHN DOE 7, on behalf of
themselves and a class of others
similarly situated,

NO. 2:13-cv-14356

HON. ROBERT H. CLELAND

MAG. R. STEVEN WHALEN

     Plaintiffs,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS (MDOC), RICK
SNYDER, DANIEL H. HEYNS,
THOMAS FINCO, DENNIS STRAUB,
RANDY TREACHER, WILLIE
SMITH, HEIDI WASHINGTON,
MARY BERGHUIS, PAUL KLEE,
JOHN PRELESNIK, CATHLEEN
STODDARD, CINDI S. CURTIN,
DAVID BERGH, JEFFREY WOODS,
ROBERT NAPEL, and KENNETH
MCKEE,

     Defendants.

_____

Michael L. Pitt (P24429)
Peggy Goldberg Pitt (P31407)
Cary S. McGehee (P42318)
Pitt McGehee Palmer Rivers & Golden, PC
Attorneys for Plaintiffs
117 W. Fourth St., Ste. 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com
ppitt@pittlawpc.com
cmcgehee@pittlawpc.com

Deborah LaBelle (P31595)
Anlyn Addis (P76568)
Attorneys for Plaintiffs
221 N. Main St., Ste. 300
Ann Arbor, MI 48104
(734) 996-5620
deblabelle@aol.com
aaddis@sbcglobal.net

Jennifer B. Salvatore (P66640)
Nakisha Chaney (P65066)
Edward Macey (P72939)
Nacht Roumel Salvatore
Blanchard & Walker, PC
Attorneys for Plaintiffs
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
jsalvatore@nachtlaw.com
nchaney@nachtlaw.com
emacey@nachtlaw.com

A. Peter Govorchin (P31161)
James T. Farrell (P35400)
Clifton B. Schneider (P70582)
John L. Thurber (P44989)
Cori Barkman (P61470)
Attorneys for Defendants
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7021
govorchinp@michigan.gov
farrellj@michigan.gov
schneiderc1@michigan.gov
thurberj@michigan.gov
barkmanc@michigan.gov

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF JOHN DOE #3'S CLAIMS BASED ON HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants, through counsel, move this Court pursuant to Fed. R. Civ. P. 56(a) for summary judgment of all of Plaintiff John Doe #3's claims against all Defendants for the reason that Plaintiff John Doe #3 failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Therefore, Plaintiff John Doe #3's claims must be dismissed without prejudice.

## RELIEF

Wherefore, for the above stated reasons and as more fully explained in the accompanying brief with exhibits, Defendants

respectfully request this Court to grant them summary judgment on all

of Plaintiff John Doe #3's claims against all Defendants.

                               Respectfully submitted,

                               Bill Schuette
                               Attorney General

                               */s/ A. Peter Govorchin*
                               A. Peter Govorchin (P31161)
                               James T. Farrell (P35400)
                               Clifton B. Schneider (P70582)
                               John L. Thurber (P44989)
                               Cori Barkman (P61470)
                               Assistant Attorneys General
                               Attorneys for Defendants
                               Corrections Division
                               P.O. Box 30217
                               Lansing, MI 48909
                               (517) 335-7021

Date: May 8, 2014

2013-0058441-A DOE\Def MSJ – Exhaustion JD #3

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE 1; JOHN DOE 2, JOHN
DOE 3, JOHN DOE 5; JOHN DOE 6;
and next friends of minors JOHN
DOE 4 and JOHN DOE 7, on behalf of
themselves and a class of others
similarly situated,

       Plaintiffs,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS (MDOC), RICK
SNYDER, DANIEL H. HEYNS,
THOMAS FINCO, DENNIS STRAUB,
RANDY TREACHER, WILLIE
SMITH, HEIDI WASHINGTON,
MARY BERGHUIS, PAUL KLEE,
JOHN PRELESNIK, CATHLEEN
STODDARD, CINDI S. CURTIN,
DAVID BERGH, JEFFREY WOODS,
ROBERT NAPEL, and KENNETH
MCKEE,

       Defendants.

NO. 2:13-cv-14356

HON. ROBERT H. CLELAND

MAG. R. STEVEN WHALEN

_____

Michael L. Pitt (P24429)
Peggy Goldberg Pitt (P31407)
Cary S. McGehee (P42318)
Pitt McGehee Palmer Rivers & Golden, PC
Attorneys for Plaintiffs
117 W. Fourth St., Ste. 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com
ppitt@pittlawpc.com
cmcgehee@pittlawpc.com

Deborah LaBelle (P31595)
Anlyn Addis (P76568)
Attorneys for Plaintiffs
221 N. Main St., Ste. 300
Ann Arbor, MI 48104
(734) 996-5620
deblabelle@aol.com
aaddis@sbcglobal.net

Jennifer B. Salvatore (P66640)
Nakisha Chaney (P65066)
Edward Macey (P72939)
Nacht Roumel Salvatore
Blanchard & Walker, PC
Attorneys for Plaintiffs
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
jsalvatore@nachtlaw.com
nchaney@nachtlaw.com
emacey@nachtlaw.com

A. Peter Govorchin (P31161)
James T. Farrell (P35400)
Clifton B. Schneider (P70582)
John L. Thurber (P44989)
Cori Barkman (P61470)
Attorneys for Defendants
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7021
govorchinp@michigan.gov
farrellj@michigan.gov
schneiderc1@michigan.gov
thurberj@michigan.gov
barkmanc@michigan.gov

_____/

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF JOHN DOE #3'S CLAIMS BASED ON HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Bill Schuette
Attorney General

A. Peter Govorchin (P31161)
James T. Farrell (P35400)
Clifton B. Schneider (P70582)
John L. Thurber (P44989)
Cori Barkman (P61470)
Assistant Attorneys General
Attorneys for Defendants
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-7021

Dated:  May 8, 2014

## CONCISE STATEMENT OF ISSUES PRESENTED

1.     A prisoner must exhaust his administrative remedies
through all steps of the grievance process before filing a
complaint under 42 U.S.C. § 1983. "Proper exhaustion" is
required, which means using all steps that the agency holds
out, and doing so properly. In this case, the Plaintiff
identified as John Doe #3 filed numerous grievances since he
became incarcerated on November 4, 2010; however, he filed
no grievances regarding any of the claims alleged in his
Complaint. Thus, Plaintiff John Doe #3 did not properly
exhaust his claims through the MDOC grievance process as
he must do under the PLRA. Should this Court grant
summary judgment in favor of the MDOC Defendants
because Plaintiff John Doe #3 failed to exhaust his
administrative remedies against them?

    Defendants Answer:   Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

_Authority_:

    Exhaustion of administrative remedies is a prerequisite to filing a

prisoner lawsuit challenging prison conditions in federal court. 42

U.S.C. § 1997e(a); _Porter v. Nussle_, 534 U.S. 516, 524 (2002); _Freeman

v. Francis_, 196 F.3d 641, 645 (6th Cir. 1999).

    The Supreme Court has held that "the PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

Further, the Supreme Court held that the PLRA requires "proper exhaustion," which is determined by the inmate's compliance with the prison grievance procedures. *Woodford v. Ngo,* 548 U.S. 81, 90 (2006).

An untimely grievance, or otherwise improperly filed grievance, or a grievance that does not comport with established grievance policy and procedure does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). *Woodford,* 548 U.S. at 97.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

## STATEMENT OF FACTS

This is a civil rights action under 42 U.S.C. § 1983 filed by John Doe Plaintiffs (John Doe 1-7) on their own behalf and on behalf of a putative class of allegedly similarly situated prisoners. Plaintiffs have sued Governor Rick Snyder, the Michigan Department of Corrections (MDOC), and several high level MDOC employees including the MDOC Director, Deputy Directors, and Wardens of various male correctional facilities around the state (hereafter "Defendants").

Plaintiffs filed their Complaint on October 15, 2013 with the benefit of above listed counsel. (Complaint, Dkt. 1). The parties have not yet been able to reach an agreement as to the parameters of disclosure of the John Doe Plaintiffs in this case. (Parties' Joint Statement Regarding Meet and Confer, Dkt. 40; Plaintiffs' Motion for Protective Order, Dkt. 61; Plaintiff's Renewed Motion for Protective Order, Dkt. 63; Defendants Response to Motion for Protective Order, Dkt. 68). This Court, though, has not yet decided whether the Plaintiffs may proceed anonymously as John Does. *Id.* However, in the parallel state court case filed in Washtenaw County Circuit Court, *John Does 1-7 v. MDOC, et al.*, No. 13-1196-CZ, Plaintiffs have disclosed the seven

1

John Does' identities, though Plaintiff John Doe #3's identity was disclosed two weeks earlier than the identities of the other John Does.

Plaintiff John Doe #3 alleges in the Complaint that he was sexually assaulted either by a fellow prisoner who was over 18 years of age or by a female staff member while Plaintiff John Doe #3 was incarcerated within a MDOC facility and under 18 years of age. (Complaint, Dkt. 1, ¶¶26-134, Pg. ID 9-25).

Prior to receiving any disclosure of the John Doe identities, on April 15, 2014, counsel for Defendants were given the identity of Plaintiff John Doe #3, in correspondence from Plaintiffs' counsel. Plaintiffs' counsel informed Defendants' counsel that Plaintiff John Doe #3 had recently been involved in a fight with another prisoner.  In the body of the letter, Plaintiff John Doe #3 was identified. After looking into the incident, Defendants' counsel determined that the fight was between Plaintiff John Doe #3 and another prisoner named Walker. (Exhibit A, Misconduct Ticket for Fight with Hearing Report).

According to the Misconduct Ticket and resulting Critical Incident Report (Exhibit B, Critical Incident Report (with personal information redacted)), the fight occurred on April 9, 2014.  Plaintiff John Doe #3

2

was sent to the emergency room to be checked for injury after the fight. Both Plaintiff John Doe #3 and the other prisoner denied that the incident was the result of any sexual pressure from the other party. (Exhibit B, Critical Incident Report, Pg. 4 of 44).  Plaintiff John Doe #3 did not appear to have suffered any major injury other than a bump to the head, or have any ongoing health concerns following the fight. (Exhibit C, Excerpts from Plaintiff John Doe #3 Medical Records). Further, Plaintiff John Doe #3 indicated that he did not wish to pursue criminal charges against the other prisoner following the fight. (Exhibit D, Note from Plaintiff John Doe #3 regarding pressing charges).

## PLAINTIFF JOHN DOE #3

Plaintiff John Doe #3 is currently housed at the Carson City Correctional Facility (DRF) in Carson City, Michigan.  He is 19 years old.  Plaintiff John Doe #3 entered the Michigan Department of Corrections on November 4, 2010, after pleading guilty to two counts of Armed Robbery, one count of Conspiracy to Engage in Armed Robbery, and one count of Felony Firearm.  At the time of his guilty plea and sentence, he was 16 years old.  When Plaintiff John Doe #3 committed

3

his crimes, he was 14 years old.  (Exhibit B, Critical Incident Report, Pg. 34-35 of 44, OTIS Information Sheet).

## PLAINTIFF JOHN DOE #3 TRANSFER HISTORY

Initially, Plaintiff John Doe #3 was housed at the Charles Egeler Reception and Guidance Center in Jackson, Michigan (RGC).  While he was housed at RGC, Plaintiff John Doe #3 was housed in a single person cell.  (Exhibit E, Affidavit of Mike Trouten).  He resided at RGC for six days until he transferred to the Thumb Correctional Facility (TCF) on November 10, 2010.  He remained at TCF until November 29, 2011, when he transferred to the Chippewa Correctional Facility (URF) in Kincheloe, Michigan.  Plaintiff John Doe #3 remained at URF until December 27, 2012, when he transferred to the St. Louis Correctional Facility (SLF) in St. Louis, Michigan.

On April 3, 2012, Plaintiff John Doe #3 transferred to the Brooks Correctional Facility (LRF) in Muskegon Heights, Michigan.  However, as a result of the April 9, 2012 fight discussed above, Plaintiff John Doe #3 transferred to the Carson City Correctional Facility (DRF) on April 15, 2014, where he remains today in level IV custody, which is one step

lower than the highest security level in which inmates are housed within the MDOC.  (Exhibit F, Transit List).

Since he became incarcerated on November 4, 2010, Plaintiff John Doe #3 has been found guilty by a licensed attorney Hearing Officer who does not work for the MDOC of 26 major misconduct tickets involving such charges as Fighting, Substance Abuse, Destruction of Property, Possession of a Weapon, and Assault and Battery of a Staff Victim.  Copies of all major misconduct tickets that Plaintiff John Doe #3 received are attached from the most recent to the earliest.  Plaintiff John Doe #3 received his last major misconduct ticket, for insolence, on May 21, 2013.  The ticket alleges that Plaintiff John Doe #3, while 6 inches away from the writing officer, accused the officer of looking at his buttocks.  Plaintiff John Doe #3 pled guilty to the offense on May 22, 2013.  (Exhibit G, Misconducts received by Plaintiff John Doe #3 in descending date order with hearing reports).

## PLAINTIFF JOHN DOE #3
## EDUCATION RECEIVED SINCE INCARCERATION

Plaintiffs claim generally in the Complaint that members of the purported class, including the seven John Doe Plaintiffs, have suffered,

among other things, "deprivation of basic educational and rehabilitative services." (Complaint, Dkt. 1, ¶7, Pg. ID 4). However, and to the contrary of Plaintiffs' Complaint allegations, when Plaintiff John Doe #3 entered the MDOC, he had not completed his high school education, arriving in prison with a 6th grade education. After attending school in the prison, Plaintiff John Doe #3 caught up and in 2012, he took all five parts of the GED test and achieved a passing Reading Score of 460 and a passing Writing Score of 440. At that time, he failed the Math portion of the test. Plaintiff John Doe #3 retook the Math portion of the test in April 2013, passed it, and received his GED at that time. Prior to receiving his GED, Plaintiff John Doe #3 had been consistently enrolled in educational programming while incarcerated, with the exception of certain gaps in his educational programming when he was housed in administrative segregation following receipt of and conviction for major misconduct offenses. (Exhibit H, Affidavit of Mary Hoag).

## PLAINTIFF JOHN DOE #3'S COMPLAINT ALLEGATIONS AND CLAIMS

The allegations in Plaintiffs' Complaint that pertain to Plaintiff John Doe #3 can be found in paragraphs 83-94. (Complaint, Dkt. 1,

¶¶83-94, Pg. ID 18-20). First, Plaintiff John Doe #3 claimed that while housed at RGC in a single person cell for six days upon entering the MDOC, that he was "sexually harassed and threatened with assault." (Complaint, Dkt. 1, ¶85, Pg. ID 18-19). It is incumbent upon an individual prisoner to report incidents of sexual harassment and contact to a staff member in order to ensure that staff members become aware of the problem so that they can take appropriate action. The MDOC has a policy entitled "Prisoner and Parolee Grievances," MDOC PD 03.02.130, effective March 5, 2007, that provides that "all prisoners and parolees shall be provided with an effective method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement." (Exhibit I, "PD 03.02.130 Prisoner/Parolee Grievances").

Plaintiff John Doe #3, did not file any grievances, pursuant to MDOC policy on grievances, PD 03.02.130, while housed at RGC despite the fact that grievances were readily available in the housing units. (Exhibit E, Affidavit of Mike Trouten). Plaintiff John Doe #3 failed to exhaust his administrative remedies and this claim must be dismissed.

7

Plaintiff John Doe #3 states in his Complaint that after he was transferred to TCF, he was not separated from adult prisoners. Plaintiff John Doe #3 claims that as a result of not being separated, he was raped and sexually abused on at least three occasions both in his cell and in the restroom.  He alleges that the first assault occurred "at TCF in or around the Winter of 2010/2011." (Complaint, Dkt. 1, ¶¶86-88, Pg. ID 19).  It should be noted that while Plaintiff John Doe #3 did lock at TCF in the winter of 2010, having arrived there on November 10, 2010, he did not reside at TCF during the winter months of 2011.  He locked at URF beginning in the fall of 2011 and continuing through the winter months.  (Exhibit F, Transit List).

Plaintiff John Doe #3 additionally claims that unidentified female staff member(s) at TCF grabbed and pulled his genitals during body searches and subjected him to additional sexual harassment.  He also alleges that he was repeatedly told by TCF staff members that he would be raped.  (Complaint, Dkt. 1, ¶85, Pg. ID 18-19).  While he resided at TCF, Plaintiff John Doe #3 did not file any grievances about any sort of sexual assault by staff or other inmates, but he did file a different grievance at TCF.

8

An affidavit from the grievance coordinator at TCF, Rhonda Thomas, has been provided as an exhibit to this brief. (Exhibit J, Affidavit of Rhonda Thomas). In her affidavit, Ms. Thomas explains that like at RGC, grievance forms are readily available in the housing units at TCF. She also explained that while housed at TCF, Plaintiff John Doe #3 did file a total of one grievance. In that grievance, Plaintiff John Doe #3 complains that an officer was holding a grudge against him for talking back. That grievance does not allege sexual assault or list any of the Defendants to this action in the grievance. Ultimately, Plaintiff John Doe #3 did not pursue that grievance past the Step I level. (Exhibit J, Attachment to Affidavit of Rhonda Thomas).

Plaintiff John Doe #3 claims that after he was transferred to URF at age 17, he was subject to routine sexual physical assault by unidentified Corrections staff, and that the staff members who witnessed the abuse, failed to prevent it. (Complaint, Dkt. 1, ¶¶91-94, Pg. ID 19-20). Again, the grievance coordinator for URF, Mike McClean, has provided an affidavit. (Exhibit K, Affidavit of Mike McClean). In his affidavit, McClean explains that grievance forms are readily available in the housing units at URF, and that while Plaintiff

9

John Doe #3 took part in the grievance system and filed seven grievances while housed at URF, none of the grievances involved any allegations of sexual assault by staff or other prisoners, and most involved issues regarding property and recreation time. *Id.* Plaintiff John Doe #3 failed to exhaust his administrative remedies. This claim must be dismissed.

Although not included in the Complaint allegations, Plaintiff John Doe #3 has also locked at three other facilities. They are SLF, LRF, and DRF. The grievance coordinators at those facilities have attached affidavits discussing Plaintiff John Doe #3's grievance activity since arriving at their facilities. All grievance coordinators have indicated that grievance forms are readily available. (Exhibit L, Affidavit of Kathy Parsons; Exhibit M, Affidavit of Jeffrey Minnerick; Exhibit N, Affidavit of Doug Kline). Undersigned counsel has also prepared and attached a grievance chart to this brief documenting the grievances that Plaintiff John Doe #3 has submitted system wide. All of the grievances listed in the chart filed by Plaintiff John Doe #3 are attached to the grievance coordinator affidavits.

10

For the reasons stated below in the argument section of this brief, Plaintiff John Doe #3's claims should be dismissed from this lawsuit because he did not exhaust his administrative remedies by filing grievances about the activity alleged in the Complaint and/or naming any of the listed Defendants in any of the twelve grievances that did file. Accordingly, the section of the Complaint addressing specific allegations pertaining to Plaintiff John Doe #3 should be stricken from the Complaint and Plaintiff John Doe #3's claims should be dismissed. Plaintiff John Doe #3 should be excluded as a class member, should a class eventually be certified in this case.

## ARGUMENT

### I.    Plaintiff John Doe #3 failed to properly exhaust his administrative remedies.

#### A.    Legal Standard.

Under 42 U.S.C. § 1997e(a), a section of the Prison Litigation Reform Act (PLRA), a prisoner-plaintiff cannot bring a civil rights action challenging prison conditions without first exhausting all available administrative remedies. The PLRA provides in 42 U.S.C. § 1997e(a):

11

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

A prisoner-plaintiff no longer has to plead or demonstrate exhaustion to satisfy the PLRA's exhaustion requirement.  Instead, failure to exhaust is an affirmative defense that must be raised by a defendant.  *Jones v. Bock*, 549 U.S. 199 (2007).  Nevertheless, exhaustion of administrative remedies is a prerequisite to filing a prisoner lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  "The plain language of the statute makes exhaustion a precondition to filing an action in federal court."  *Porter*, 534 U.S. at 523; *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter,* 534 U.S. at 532.  Thus, the exhaustion requirement applies to Plaintiff John Doe #3's claim that he has been sexually assaulted and harassed while incarcerated in MDOC prisons.  As referenced in the statement of facts

12

above, in *Woodford v. Ngo*, the Supreme Court held that the PLRA requires "proper exhaustion," which is determined by the inmate's compliance with the prison grievance procedures. *Woodford v. Ngo,* 548 U.S. 81, 90 (2006). In Michigan, the grievance procedure is codified in MDOC policy regarding grievances: MDOC PD 03.02.130, Prisoner/Parolee Grievances. (Exhibit I).

The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons, and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525. The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.

Requiring proper exhaustion serves all of these goals. It gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prison officials with a fair opportunity to correct their own errors. *Woodford,* 548 U.S. at 94. This is important in relation to prison systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more

13

intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 (1973). Therefore, it is essential for a prisoner-plaintiff to properly exhaust his administrative remedies before filing suit. Simply, a prisoner seeking to sue in federal court must have filed a grievance that complies with the prison grievance system regarding the allegations made in his complaint.

An untimely grievance, or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). Permitting an untimely grievance, or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford,* 548 U.S. at 97. The *Woodford* court explained:

> A prisoner who does not want to participate in the prison grievance process **will have little incentive to comply** with the system's procedural rules **unless noncompliance carries a sanction** …. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And

14

> **acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration had no alternative but to dismiss the grievance on procedural grounds.  We are confident that the PLRA did not create such a toothless scheme.**
> *Woodford*, 548 U.S. at 95.  [Emphasis Added].

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones*, 549 U.S. at 219.

Finally, a prisoner must exhaust all three steps of the grievance process.  The MDOC's three-step process is explained more fully in the following section.  However, failing to name individuals who are defendants to a lawsuit in an otherwise properly exhausted grievance is not proper exhaustion, as explained below.

## B.     The applicable MDOC grievance policy, PD 03.02.130.

As indicated above, the administrative process applicable to Plaintiffs' claims is governed by MDOC Policy Directive 03.02.130,

Prisoner/Parolee Grievances (Effective date 03/05/07). (Exhibit I). The

policy directive states, in pertinent part, as follows:

> E.     Grievances may be submitted regarding alleged
> violations of policy or procedure or unsatisfactory conditions
> of confinement which directly affect the grievant, including
> alleged violations of this policy and related procedures.

> * * *

> P.     Prior to submitting a written grievance, the grievant
> shall attempt to resolve the issue with the staff member
> involved within two business days after becoming aware of a
> grievable issue, unless prevented by circumstances beyond
> his/her control or if the issue falls within the jurisdiction of
> the Internal Affairs Division in Operations Support
> Administration. If the complaint is not resolved, the
> grievant may file a Step I grievance. The Step I grievance
> must be filed within five business days after the grievant
> attempted to resolve the issue with staff.

> * * *

> R.     A grievant shall use the Prisoner/Parolee Grievance
> form (CSJ-247A) to file a Step I grievance; a
> Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be
> used to file a Step II or Step III grievance. The forms may be
> completed by hand or by typewriter however, handwriting
> must be legible. The issues shall be stated briefly but
> concisely. Information provided shall be limited to the facts
> involving the issue being grieved (i.e., who, what, when,
> where, why, how). **Dates, times, places and names of all
> those involved in the issue being grieved are to be
> included.** (Emphasis added).

> * * *

Step I

V.     Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator designated for the facility, field office or other office being grieved....

*  *  *

Step II

BB.   A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response. To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within ten business days after receiving the Step I response or, if no response was    received, within ten business days after the date the response was due, including any extensions.

*  *  *

Step III

FF.   A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the  date the response was due, including any extensions.

17

**C.    Plaintiff John Doe #3 failed to exhaust his administrative remedies through Step III with regard to all issues and defendants listed in the Complaint.**

Despite the fact that Plaintiff John Doe #3 filed a total of twelve grievances between the time he became incarcerated until the present, he failed to submit any grievances where he named any of the Defendants in this lawsuit or complained of any issue remotely related to sexual assault or harassment by a fellow prisoner or by staff. Further, Plaintiff John Doe #3 never filed any of his twelve grievances past the Step II level.  (Exhibit O, Grievance Chart). Therefore, none of the issues in those grievances were properly exhausted.

 In the grievance policy, discussed above, Step III grievances are tracked:

> GG.   The Grievance and Appeals Section shall be the respondent for Step III grievances on behalf of the Director. Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system. The tracking system shall include information on the subject matter of each grievance received and, for rejected grievances, the basis for the rejection.

Richard Russell, who is the Manager of the MDOC Grievance Section, has averred that he has caused a search of MDOC's grievance database and found no grievances submitted by Plaintiff John Doe #3 to the Step

18

III level.  He further explains, in great detail, how grievances are tracked (according to prisoner name and number), as well as what the requirements for grievance filing are at all levels of the process. (Exhibit P, Affidavit of Richard Russell).

MDOC Policy Directive 03.05.07 (effective March 5, 2007), paragraph R is clear on the issue of naming the individual to be grieved: "Dates, times, places and **names of all those involved in the issue being grieved are to be included**" [in a grievance form].  By failing to name any Defendants in this lawsuit, in any of the grievances that he filed at any step of the process, Plaintiff John Doe #3 did not "properly exhaust" his administrative remedies against any of the Defendants in this matter. By failing to grieve any event described in the Complaint, Plaintiff John Doe #3 has failed to exhaust as to any issue addressed in the Complaint, even against a person not named in the Complaint.

Finally, Plaintiffs claim that the fact that MDOC policy requires a grievant to consult with the individual being grieved prior to filing a grievance causes Plaintiffs to be unable to comply with the grievance policy because by consulting with staff they would be putting themselves in "grave danger" does not make sense.  (Complaint, Dkt. 1,

19

¶51, Pg. ID 14).  MDOC policy allows for grievances to be filed without consulting the staff member involved if the incident pertains to an Internal Affairs type of issue, such as an allegation of a sexual assault. (Exhibit P, Affidavit of Richard Russell).

Simply put, Plaintiff John Doe #3 failed to comply with the established MDOC grievance policy.  He failed to name Defendants in any grievance that he filed. He filed twelve grievances that address other issues not related to sexual assault or harassment, so he may not argue now that he did not know how to utilize or did not have access to the grievance system or grievance forms.

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above, Defendants request that this Court grant their Motion for Summary Judgment and dismiss Plaintiff John Doe #3's allegations from this Complaint without prejudice because Plaintiff John Doe #3 failed to properly exhaust his administrative remedies by filing grievances naming Defendants and complaining of being sexually assaulted or harassed, as he was required to do by the PLRA and applicable case law.

Respectfully submitted,

Bill Schuette
Attorney General

*/s/ A. Peter Govorchin*
A. Peter Govorchin (P31161)
James T. Farrell (P35400)
Clifton B. Schneider (P70582)
John L. Thurber (P44989)
Cori Barkman (P61470)
Assistant Attorneys General
Attorneys for Defendants
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-7021

21

## <u>CERTIFICATE OF SERVICE (E-FILE)</u>

I hereby certify that on May 8, 2014, I electronically filed the

above document(s) with the Clerk of the Court using the ECF System,

which will provide electronic copies to counsel of record.


<u>/s/ A. Peter Govorchin</u>
Assistant Attorney General
Attorneys for Defendants
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-7021
govorchinp@michigan.gov
P31161

2013-0058441-A DOE\ Def MSJ - Exhaustion Brief JD#3

22