**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOHN DOE 1, et al.,

      Plaintiffs,

v.                                Case No. 13-14356

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS
OF FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND
SCHEDULING A TELEPHONE CONFERENCE**

Pending before the court is Defendants' Motion for Summary Judgment on the

Basis of Plaintiffs' Failure to Exhaust Administrative Remedies. (Dkt. # 133.) Plaintiffs,

John Does 1-7, have proposed a class seeking injunctive and declaratory relief and

damages arising from their treatment in Michigan Department of Corrections ("MDOC")

facilities while under the age of eighteen. Defendants argue that the Prison Litigation

Reform Act ("PLRA"), 42 U.S.C. § 1997(e), bars Plaintiffs' claims because they failed to

exhaust available administrative remedies before filing this action, as required by the

PLRA. Plaintiffs have filed an opposition, (Dkt. # 144), to which Defendants have

replied, (Dkt. # 150), thus the matter is fully briefed. A hearing was held on September

21, 2015, at which all parties were represented and heard. For the reasons stated

below, the court will grant in part and deny in part Defendants' motion for summary

judgment.

# I. BACKGROUND

Plaintiffs are former youthful prisoners, i.e. prisoners under the age of eighteen, who were imprisoned alongside adults in MDOC facilities. Though MDOC no longer houses youths with adults (Defs.' Mot. at 1 n. 1.), at the time of the conduct alleged in the complaint prisoners as young as sixteen ate, washed, recreated, worked, and bunked with adults. Plaintiffs allege that as a result of their placement among adults, they and similarly situated youthful prisoners suffered an increased risk of sexual harassment and assault, including from MDOC officers who participated in or turned a blind eye to the harmful conduct. As a result of the MDOC housing policy, Plaintiffs assert that they have suffered physical injuries, sexual violence and abuse, and physiological trauma. The court has allowed the seven current "John Doe" Plaintiffs to proceed pseudonymously due to concerns about their safety in the MDOC prisons in which they currently reside.

The court will limit itself to a recitation of the facts pertinent to the exhaustion analysis at issue. In its previous opinion at Dkt. # 91, the court summarized some of the details of the particular assaults and incidents of harassment. The facts viewed in the light most favorable to Plaintiffs are as follows:

## A. John Doe 1

Doe 1 was incarcerated in 2012 at the age of seventeen. (Dkt. # 1, Pg. ID 15-16.) He has been housed in Charles E. Egeler Reception and Guidance Center ("RGC"), Richard A. Handlon Correctional Facility ("MTU"), and Bellamy Creek Correctional Facility ("IBC"). (*Id.*) According to Doe 1, he suffered harassment and a number of

2

sexual and physical assaults at the hands of his adult cellmates and other prisoners. (*Id.*) He reported these incidents orally to corrections officers, his emotions therapy teacher, and participated in a meeting with a deputy warden and other prison administrators where he described, in basic terms, some of the sexual assaults he had suffered. (Dkt. # 144-4, Pg. ID 3247, 3249.) Plaintiffs have not asserted that Doe 1 attempted to formally grieve any of the incidents at issue in this litigation.

### B. John Doe 2

Doe 2 was incarcerated in 2011 at the age of sixteen. (Dkt. # 1, Pg. ID 17-18.) He has been housed at RGC, Thumb Correctional Facility ("TCF"), and Oaks Correctional Facility ("ECF"), (*Id.*). Doe 2 alleges that he suffered physical and sexual assaults by other prisoners and believes that a corrections officer facilitated some of those physical assaults by opening his cell door to his attackers. (Dkt. # 144-5, Pg. ID 3255-59.) He reported some of these incidents to health professionals at the prison, though he later recanted. (*Id.* at Pg. ID 3263-65.) He also orally reported some of the incidents to corrections officers. (*Id.* at 3264.) In 2014, Doe 2 was threatened with sexual assault, which he claims he reported by sending written correspondence to the warden, but received no response. (Dkt. # 144-5, Pg. ID 3262). That incident and report occurred after Doe 2 reached the age of eighteen. Plaintiffs have not asserted that Doe 2 attempted to formally grieve any of the incidents at issue in this litigation.

### C. John Doe 3

3

Doe 3 was incarcerated in 2010 at the age of sixteen. He has been housed at RGC, TCF, and Chippewa Correctional Facility ("URF"). (Dkt. # 1, Pg. ID 18-20.)  Doe 3 claims he suffered a number of physical and sexual assaults at the hands of other prisoners, some of which occurred within the sight of corrections officers who ignored the conduct. (Dkt. # 144-6, Pg. ID 3280.) He was also searched by corrections officers who, as he describes, grabbed his genitalia until he felt pain. (*Id.* at Pg. ID 3279). Doe 3 filed a grievance against a corrections officer when he failed to respond to Doe 3's report of a physical assault. (Dkt. # 144-6, Pg. ID 3281.) He never received a response to the grievance and did not file a Step II grievance because, as he stated, "I didn't know how long you had to take before the grievance came back. Then after so long . . . I feel like it was too late." (*Id.*) Doe 3 also stated in deposition that "there's some grievances that I wrote that I know that they ripped up because they ripped them up in front of my face." (Dkt. # 133-8, Pg. ID 2831).

### D. John Doe 4

Doe 4 was incarcerated at the age of sixteen. (Dkt. # 1, Pg. ID 20-21.) He has been housed only at TCF. (*Id.*) He asserts that he was sexually assaulted by a female corrections officer but never reported the incident to anybody because he feared he would not be believed or would be accused of misconduct. (Dkt. # 144-7, Pg. ID 3286, 3289). Plaintiffs have not asserted that Doe 4 attempted to formally grieve any of the incidents at issue in this litigation.

### E. John Doe 5

4

Doe 5 was incarcerated in 2010 at the age of sixteen. (Dkt. # 144-8, Pg. ID 3292.) He has been housed at RGC, TCF, Earnest C. Brooks Correctional Facility ("LRF"), URF, and Carson City Correctional Facility ("DRF"). (Dkt. # 1, Pg. ID 21-23.) He contends that he suffered a number of prisoner on prisoner sexual assaults, and was also subjected to inappropriate pat-downs by female corrections officers. (*Id.* at Pg. ID 3295.) Doe 5 orally reported to an assistant resident unit supervisor and a corrections officer that he was being pressured for sex and money by other prisoners, after which the prison conducted an investigation. (Dkt. # 144-8, Pg. ID 3293-94, 3303.) He also reported some of the sexual assault activity to other prisoners, but did not report that activity to any prison officials. (Dkt. # 144-8, Pg. ID 3299, 3302.) Plaintiffs have not asserted that Doe 5 attempted to formally grieve any of the incidents at issue in this litigation.

### F. John Doe 6

Doe 6 was incarcerated at the age of seventeen. (Dkt. # 1, Pg. ID 23-24.) He has been housed at RGC, MTU, Gus Harrison Correctional Facility ("ARF"), and Marquette Branch Prison ("MBP"). (*Id.*) Before being imprisoned he was placed in special education classes based on learning disabilities that affected his reading and spelling. (Dkt. # 144-9, Pg. ID 3307.) While in prison, other prisoners have sexually harassed and assaulted Doe 6. (*Id.* at Pg. ID 3311.) He requested medical assistance in writing after he was moved from one prison to another. (*Id.* at Pg. ID 3312.) Shortly after the medical appointment, a prison investigator interviewed Doe 6 about the incident. (*Id.*) Plaintiffs have not asserted that Doe 6 attempted to formally grieve any of the incidents at issue in this litigation.

5

### G. John Doe 7

Doe 7 was incarcerated at the age of seventeen. (Dkt. # 1, Pg. ID 24-25.) He has been housed only in RGC and TCF. (*Id.*; Dkt. # 144-10, Pg. ID 3319.) He claims he was the victim of an attempted sexual assault. (*Id.* at Pg. ID 3318-19.) He orally complained to a corrections officer and obtained grievance forms, but never filled them out because he didn't know how to fill them out and stated, "I felt like they wasn't going to help me anyway." (*Id.* at Pg. ID 3319.) Plaintiffs have not asserted that Doe 6 formally grieved any of the incidents at issue in this litigation.

### II. STANDARD

A court will enter summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Additionally, the court's role is not to weigh the evidence and rule on the truth of the matter, but to determine whether there is a genuine issue to be considered at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

6

(1986). Summary judgment, therefore, is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52 (1986).

### III. DISCUSSION

The pending motion for summary judgment presents two questions. First, have Plaintiffs properly exhausted MDOC's administrative remedies? And second, if Plaintiffs have failed to exhaust, is there some reason the court should, nonetheless, allow the claims to proceed? That is, is there any indication that the facts of this case might provide grounds for the exhaustion requirement to be excused or relaxed? The court will take these issues in turn.

### A. Whether Plaintiffs Have Exhausted MDOC's Administrative Remedies

The parties disagree over what constitutes proper exhaustion. Accordingly, the court will first determine what is required for a prisoner to properly exhaust his claims, and then analyze whether any Plaintiff has properly exhausted.

### 1. The Exhaustion Requirement

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The PLRA itself does not provide the method of exhaustion, rather, "it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks omitted). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to properly exhaust." *Id.*

Looking to MDOC's procedures, Policy Directive ("PD") 03.02.130 (eff. 07/09/07) requires a prisoner to participate in a multi-step grievance process, explained in brief here, in order to properly exhaust his claim under the PLRA.  ¶ B. First, within two days of discovering a problem, prisoners are directed to attempt to informally resolve their problem with the staff member involved. *Id.* at ¶ P.  If that fails, the prisoner must file a Step 1 grievance within five days of the attempted resolution. *Id.* If the prisoner is dissatisfied with the response, or if the prisoner does not receive a timely response, he can file a Step II grievance within ten days. *Id.* at ¶ BB. Similarly, if a prisoner receives an unsatisfactory response or no response at Step II, he can file a Step III grievance within ten days. Id. at ¶ FF. Complaints filed by prisoners "serve to exhaust a prisoner's remedies only when filed as a grievance through all three steps of the grievance process." ¶ B.

Plaintiffs argue that "administrative remedies for sexual assaults are not limited to the grievance procedure." Def.'s Opp. at 18. Specifically, they claim that MDOC PD 03.03.140, concerning sexual misconduct, "establish[es] multiple avenues of administrative exhaustion of remedies in cases of sexual misconduct" and "[u]se of any of these various administrative processes satisfies the exhaustion requirement." Id. at 19. For the reasons explained below, the court rejects this contention and finds that the formal grievance process is the only method of exhaustion that MDOC has made available to Plaintiffs.

The clear text of MDOC PDs 03.03.140 and 03.02.120 belie Plaintiffs' assertion that any other method of raising concerns to prison staff serves to exhaust a claim. PD 03.03.140 states, "[c]omplaints filed by a prisoner regarding conduct prohibited by this

8

policy shall serve to exhaust a prisoner's administrative *remedies only when filed as a grievance through all steps of the grievance process in compliance with PD 03.02.130 "Prisoner/Parolee Grievances.*" ¶ R (eff. 12/29/10) (emphasis added). Also, PD 03.02.130, governing the grievance process, has reciprocal language requiring complaints of sexual misconduct to be exhausted through the grievance process. "Complaints . . . serve to exhaust a prisoner's administrative remedies only when filed as a grievance . . . . This includes but is not limited to complaints of conduct in violation of PD 03.03.140 'Prohibited Sexual Conduct Involving Prisoners.'" PD03.02.130 ¶ B.

While MDOC has devised ways to address prisoner complaints, including sexual assault complaints, through methods less formal than the grievance process, there is no reason to believe these other methods serve to exhaust claims under the PLRA. "[I]t is the prison's requirements . . . that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks omitted). Plaintiffs are mistaken in assuming that just because a prison provides informal mechanisms for addressing problems, that such mechanism must also serves to exhaust claims under the PLRA.

The sexual misconduct policy states that complaints may be reported to certain compliance administrators, any Department employee, or through the sexual assault hotline. PD 03.03.140 ¶ O. In general, "allegations may be reported verbally or in writing, *including through the grievance process.*" *Id.* (emphasis added). This last phrase shows that MDOC, sensibly, has created a number of reporting mechanisms, some within the grievance process and some outside of it. Thus, while sexual misconduct may be reported with a grievance that starts the path to exhaustion, this

9

does not make every other method of reporting sexual misconduct an alternative path to exhaustion. For example, a prisoner may call the sexual assault hotline, but there is no indication in the policy that a call to the hotline exhausts a claim or even begins the exhaustion process.

This conclusion is supported by the purpose of the PLRA as articulated by the Supreme Court. "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion allows the prison a full and fair opportunity to address complaints by requiring the prisoner to escalate the matter to such a level and in such a manner as to allows decisionmakers the chance to respond. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* Quicker, less formal methods of raising a complaint offer prisoners easier access to fast solutions, but do not necessarily constitute proper exhaustion. It is not surprising that MDOC has created both a formal multi-step grievance process for the purpose of PLRA exhaustion, and other faster, informal reporting processes that allow for rapid responses to emerging issues.

With the understanding that only the formal grievance process laid out in PD 03.02.130 can exhaust a prisoner's remedies under the PLRA, the court will now consider whether any of the John Does have properly exhausted their claims.

### 2. Application to John Doe 1-7

Given that proper exhaustion requires a prisoner to advance through all three levels of the grievance process, it is indisputable that no Plaintiff has properly exhausted. Defendants have carried their burden at this stage by showing that no John Does, except John Doe 3, filed a grievance about the issues in this litigation. John Doe 3 filed one grievance at the Step 1 level, but when he received no response he failed to file a Step 2 grievance. As explained above, when a prisoner receives no response or an untimely response, he is able to advance to the next step in the grievance process. PD 03.02.130 ¶ BB. Failure to do so means that the prisoner has not complied with the full process and has failed to exhaust. Thus, this court will find that, even viewing the evidence in the light most favorable to Plaintiffs, no John Doe properly exhausted his claims.

## B. Whether Plaintiffs are Excused From Exhaustion or Subject to a Relaxed Exhaustion Requirement

Given that Plaintiffs' claims are not properly exhausted, the court must next look to see if Plaintiffs could establish any reason they should be excused from the exhaustion requirement. Plaintiffs advance four theories on which they argue the court could excuse or relax the exhaustion requirement : 1) the exhaustion requirement should be relaxed or excused because of the John Does' status as minors, 2) MDOC does not allow prisoners to grieve the type of complaints advanced in this litigation, 3) as to some John Does, developmental and learning disabilities rendered the grievance process unavailable to them, and 4) prison employees thwarted Plaintiffs' efforts to submit grievances so that administrative remedies were not reasonably available. The court addresses each argument seriatim.

11

**1. Plaintiffs' Juvenile Status**

Plaintiffs argue that because of their status as juveniles, they should be afforded some level of flexibility in meeting the PLRA's exhaustion requirement. Plaintiffs cite *J.P. v. Taft*, 439 F. Supp. 2d 793, 826 (S.D. Ohio 2006), a case in which a district court found juvenile status to be "an integral element to its exhaustion analysis." This court has previously noted, in its Order Regarding Scope of Discovery (Dkt. # 130), the *possible* import of juvenile status. Upon fuller examination, however, the court will not relax or create an exception to the PLRA's exhaustion requirement based on a prisoner's status as a youth.

The sole question is whether, under the PLRA, youthful inmates are treated differently than adult inmates. This is a pure question of statutory interpretation, and the court, as always, begins with the text of the statute. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). "It is well established that 'when the statute's language is plain, the sole function of the court . . . is to enforce it according to its terms.'" *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). Additionally, "[a]s a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376 (1990). "[T]he simple fact is that, as a policy matter, whether an exception should be created is a question for legislative rather than judicial judgment. *United Metal Products Corp. v. National Bank of Detroit*, 811 F.2d 297, 300 (1987) (citing *United States v. Rutherford*, 442 U.S. 544, 559 (1979)). "Only when a literal construction of a statute

12

yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied." *Id.*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). That section defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, *or adjudicated delinquent* for, violations of criminal law . . . ." *Id.* at § 1997e(h) (emphasis added). The statutory language "adjudicated delinquent" shows that Congress specifically contemplated juveniles when writing the law. *See Lewis v. Gagne*, 281 F. Supp. 2d 429, 433 (N.D.N.Y. 2003) ("The plain meaning of [§ 1997e(h)'s] language clearly includes juveniles.").

While the word delinquent has other meanings in other contexts, such as "past due", *Delinquent*, BLACK'S LAW DICTIONARY (10th ed. 2014), the PLRA uses the term to refer to juveniles. The statute's definitions section makes clear that the PLRA is concerned with juveniles who are adjudicated delinquent and not individuals who, for example, are behind on their taxes. That section defines "institution" to include a facility "in which reside juveniles who are adjudicated delinquent." 42 U.S.C. § 1997(1)(B)(iv)(III).

Other statutes use similar language to bring juveniles within reach. For example, the Sex Offender Registration and Notification Act ("SORNA"), defines the term "convicted" to include cases in which an individual is "adjudicated delinquent as a juvenile for that offense." 42 U.S.C. § 16911(8). Additionally, SORNA, unlike the PLRA,

*does* make distinctions based on an individual's status as a minor. Section 16915 of SORNA allows for a reduction in the registration period for a tier III offender (the highest offender level) who was "adjudicated delinquent for the offense which required registration" if he maintains a clean record for twenty-five years. 42 U.S.C. § 16915(3)(B). The statute has no such provision for tier III offenders convicted as adults. Thus, Congress is capable of making distinctions between adult and youthful offenders when it wishes to. Congress chose to do so in SORNA and has not done so in the PLRA. The court will decline the opportunity to read into the PLRA an exception that is wholly unsupported by the text.

Nor does the court believe this result to be manifestly unreasonable or such an absurd result as to justify a judicially implied exception. *See United Metal Products Corp.*, 811 F.2d at 300. The PLRA was passed "in the wake of a sharp rise in prisoner litigation in federal courts." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The statute's purpose is to both decrease the quantity and increase the quality of prisoner suits. *Porter v. Nussel*, 534 U.S. 516, 528 (2002). The centerpiece of the legislation is the exhaustion requirement, which applies in any suit challenging prison conditions, not just suits under § 1983. *Woodford*, 548 U.S. at 84. Given the wide reach of the PLRA, and Congress' desire to stem the flood of prisoner litigation, it is not surprising that Congress would choose to address *all* prisoner litigation, including litigation brought by juvenile inmates. Accordingly, this court will not second guess the reasonable policy decisions Congress made in passing the PLRA.

While the question at hand is resolved by the text of the PLRA, the court will also address Plaintiff's contention that *J.P. v. Taft*, 439 F. Supp. 2d 793 (S.D. Ohio 2006),

14

supports finding an exception in this case. *J.P.* relied heavily on the Sixth Circuit's decision in *Thomas v. Woolum*, 337 F.3d 720, 726-27 (6th Cir. 2003), which established that a plaintiff's procedural error in filing his grievance is not fatal to his claims so long as the grievance provides "fair notice" to the defendant. 439 F. Supp. at 821. Accordingly, the district court in *J.P.* analyzed whether the procedurally faulty grievance at issue provided "fair notice" to the prison system. *Id.* at 825 ("Under Thomas, then, the pivotal inquiry in assessing the adequacy of prisoner's PLRA claim is whether prison officials had 'fair notice' of that claim."). Finding that the grievance did provide fair notice, the court allowed the claims to proceed. *Id.* at 826.

*Thomas*, however, was explicitly abrogated by the Supreme Court in *Woodford v. Ngo*, 548 U.S. 81, 87 (2006). *See also Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008) (noting *Thomas'* abrogation). *Woodford* rejected the Sixth and Ninth Circuits' more relaxed "fair notice" approach to exhaustion. 548 U.S. at 87. Instead, the Supreme Court required "proper exhaustion," that is, exhaustion in compliance with all administrative rules and procedures. *Id.* at 90-91,93. Even assuming, arguendo, that juvenile status was important to the "fair notice" analysis before *Woodford*, that consideration has no bearing on this court's exhaustion analysis after *Woodford*. The court, therefore, is not persuaded to deviate from the clear text of the PLRA, which addresses juvenile and adult prisoners equally.

### 2. Whether Defendants Provided A Path For Exhausting Policy Complaints

Generally, to hold a prisoner to the exhaustion requirement, a prison must offer some route to a grievance tribunal that has authority to take some responsive action. *Churner v. Booth*, 532 U.S. 731, 736 n. 4 (2001). This is because the inmate has

15

nothing to exhaust if administrative authorities cannot act on the subject of the complaint. *Id.* Thus, the Sixth Circuit has held that "[s]o long as the prison system has an administrative process that will review a prisoner's complaint . . . the prisoner must exhaust his prison remedies." *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (quoting *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999)). On the other hand, where a prison "has a flat rule declining jurisdiction," exhaustion is not required. *Id.*

At issue is whether MDOC has such a rule declining jurisdiction that applies to Plaintiffs' claims. Plaintiffs make two arguments in the affirmative. First, they argue that joint or class grievances are not permitted under PD03.02.130, citing *Figel v. Bochard*, 89 Fed. App'x 970, 971 (6th Cir. 2004). Pls.' Opp. at 17. *Figel* concerned conduct that occured in the early 2000s, when an earlier version of MDOC PD 03.02.130 was in effect. That version of the Policy made non-grievable "[i]ssues which affect the entire prisoner population or significant numbers of prisoners." MDOC PD 03.02.130 ¶ F.4. (eff. 11/01/00). Accordingly, in that case, the prison rejected a grievance concerning heating and ventilation because it was a "group issue." Figel, 89 F. App'x at 971. Plaintiffs argue that their claims are also group or class issues and so cannot be grieved. Pls.' Opp. at 17.

The "group issue" ban, however, was removed from the next iteration of PD 03.01.130 (eff. 04/28/03) and is not in the version currently effective as of March 5, 2007. Today, issues affecting a large number of prisoners may be grieved by any

16

affected individual.[1] Thus *Figel* is inapposite, and the court will reject this rationale for excusing exhaustion.

Second, Plaintiffs argue that their claims fall within the rule provided in PD 03.02.130 ¶ F.1, such that this court should excuse Plaintiffs' failure to exhaust. That subsection states that "[a] grievant may not grieve the <u>content</u> of policy or procedure except as it was specifically applied to the grievant." *Id.* (emphasis in original).

Plaintiffs argue their claims fall within the rule because it is the official housing policy and the official policy of "subjecting youth to solitary confinement, tasers and other treatment inconsistent with their youthful status" that they challenge. *Id.* Defendants, in turn, argue that Plaintiffs' claims either arise out of *specific applications* of policy to prisoners or are not related to the policy at all, so that they are all grievable. Defs.' Reply at 8. Specifically, Youthful prisoners' placement among adults and the failure to separate youths and adults by sight and sound are both policies that were "specifically applied" to the John Does, and thus can be grieved. *Id.* at 8-9. The other claims concerning the use of segregation, cross gender searches and other inappropriate staff conduct, failure to protect, and inadequate supervision are all claims, Defendants argue, involving violations of policy, not policy content, and are thus grievable. *Id.*

---

[1] The current version of PD 03.02.130 (eff. 07/09/07) states that "[t]wo or more prisoners and/or parolees may not jointly file a single grievance regarding an issue of mutual impact or submit identical individual grievances regarding a given issue as an organized protest." This is not a rule declining jurisdiction over all issues affecting a class of prisoners, instead, it is a procedural rule prohibiting class grievances.

In two cases, as Plaintiffs point out, judges of this district have considered the same or similar MDOC bans on policy-based grievances and refused to dismiss or grant summary judgment for failure to exhaust administrative remedies.

In *Mitchell v. Caruso* prisoners complained that a prison's policy of prohibiting possession of certain legal materials concerning the Uniform Commercial Code violated their First Amendment rights. No. 06-11567, 2006 WL 3825077 (E.D. Mich. Dec. 26, 2006). One plaintiff's Step I grievance complained that the policy was overbroad and vague and violated his First Amendment rights. The plaintiff received the following response: "grievance is rejected in accordance with PD 03.02.130. You cannot grieve the content of policy and procedure." *Id.* at *2. The court in Mitchell wrote that "Plaintiffs clearly challenge the content of [the policy]" and excused exhaustion. *Id.*

In *Murphy v. Martin* a prisoner brought a claim based on his exclusion from MDOC's Technical Rules Violation ("TRV") program. 343 F. Supp. 2d 603 (E.D. Mich. 2004). That program might have allowed for his release from prison, but the prisoner was excluded from the program based on mental disabilities for which he was medicated. The PD at issue excluded any prisoner who has "a physical or mental condition not consistent with the rigorous demands of the Program offered at the TRV center, as determined from the Offender Health Questionnaire (CFJ-129)." *Id.* at 608. The prisoner argued that the prison policy excluded, per se, all those with mental disabilities from the TRV program in violation of the Equal Protection Clause and various federal laws protecting the disabled. The *Murphy* court stated that "Plaintiff clearly takes issue with the content of a MDOC Policy Directive which on its face excludes [prisoners with mental conditions]" and excused exhaustion. *Id.*

18

As a preliminary matter, *Mitchell* fails to support Plaintiffs' argument because that case presents a factual scenario substantially different than the instant case. In *Mitchell*, the prisoner presented a grievance that clearly attacked the face of the policy as overbroad and vague, and MDOC explicitly rejected it based on the policy-grievance ban. Plaintiffs in this case offer no evidence that MDOC rejected their grievances (or would have rejected their grievances, had they been filed) on that ground.

Additionally, this court is not bound by the decisions of another district court, *see Michigan Elec. Employees Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 761-62 (E.D. Mich. 2008), and, for the following reasons, the opinions are not instructive in any event. Both *Murphy* and *Mitchell* were dismissed on other grounds and simply did not fully address the question posed by the operative language, "except as [the policy] was specifically applied to the grievant," that is at issue here. *Murphy*, 343 F. Supp. 2d at 605 (excusing exhaustion, but ordering dismissal because "Plaintiff's claims necessarily imply the invalidity of his conviction and should be dismissed"); *Mitchell*, 2006 WL 3825077 **4, 5 (excusing exhaustion, but ordering dismissal based on mootness and qualified immunity). Those courts did not consider whether the specific application of the policies to plaintiffs made their complaints grievable, and instead, in dicta, excused exhaustion and moved onto other dispositive issues. Courts give little weight to dictum when more complete analysis indicates the dictum is incorrect. See *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S.Ct. 1351,1368 (2013).

Indeed, when considering the "specifically applied" exception, other courts in this district have reached the opposite conclusion regarding the interpretation of MDOC's ban on policy-based grievances. *See Hudson v. Caruso*, 2011 WL 1042296 at *7 (E.D.

19

Mich. Jan. 24, 2011); *Melton v. Vasbinder*, 2009 WL 928861 *3 (E.D. Mich. March 30, 2009). Those courts read the language of PD 03.02.130 F.1. to create a requirement that prisoners grieve only policies that they believe have negatively impacted them. Instead of being allowed to grieve policies they merely disagree with, those courts held that prisoners may only grieve policies that were applied to them and that they allege injured them in some way.

The *Hudson* and *Melton* cases have the better of the argument. Interpreting the MDOC policy as a sweeping exception to the grievance process would allow prisoners to simply skip the PLRA's exhaustion requirement for any complaint arising from the enforcement of any MDOC policy. A prisoner could do so through clever pleading, casting his complaint as one attacking the policy facially.

It is more sensible to understand the PD as requiring something akin to standing. Like Article III's standing requirement, the MDOC policy is sensible because it preserves scarce prison resources by preventing a flood of grievances brought by prisoners who have only an ideological gripe with the policy. *Cf. United States v. Richardson*, 418 U.S. 166, 192 (1974) (Powell, J., concurring) (explaining that the standing requirement prevents the Supreme Court from becoming "an open forum for the resolution of political or ideological disputes"). It also improves the quality of decisions from the grievance panel by ensuring that there is a specific controversy and set of facts before the panel on which to make a decision.

Plaintiffs' claims arise from the specific application of prison policies to each John Doe, and, as such, are grievable claims. Thus, the court will not excuse the exhaustion requirement based on PD 03.02.130's ban on policy-based grievances.

20

### 3. Developmental and Learning Disabilities

Plaintiffs argue that there is a dispute of material fact as to whether the grievance process was available to John Does 3, 4, 5, and 6 because of their "learning disabilities and limited education." Pls. Opp. at 24. The Sixth Circuit has held that "[t]he plain meaning of the term 'available' is that a prisoner is required to exhaust only those procedures that he is reasonably capable of exhausting." *Braswell v. Corrections Corp. of America*, 41 F. App'x 622 (6th Cir. 2011). Thus, one person's physical or mental incapacities could render administrative remedies unavailable. *Id.* at 625-26 (citing *Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003) (prisoner's broken arm that prevented him from filling out the grievance form could be grounds for excuse); *Johnson-Ester v. Elyea*, No. 07-4190, 2009 WL 632250, at *6 (N.D. Ill. Mar. 9, 2009) (disabling mental illness may render administrative remedies unavailable)).

Plaintiffs argue, "[i]n this case, several Plaintiffs has severe learning disabilities and limited education including Does 3, 4, 5, and 6 . . . . Thus, their inability to formally invoke and follow the procedural steps required for a grievance should be excused." Pls. Opp. at 24. When considering a motion for summary judgment, "[t]he court need consider only the cited material, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Plaintiffs have failed to cite to any evidence in the record in support of their argument. Defendants, on the other hand, have provided exhibits to the court showing that John Does 3, 5, and 6 have all successfully submitted grievances with respect to unrelated matters. (John Doe 3: Dkt. # 133-22, Pg. ID 2959-88; John Doe 5: Dkt. # 133-24, Pg. ID 2992-3039; John Doe 6: Dkt # 133-25, Pg. ID 3042-45). As to John Doe 4, while there is no evidence that he has submitted other grievances, the

21

court finds no record evidence that he is illiterate or has any mental incapacity that would render the grievance system unavailable to him. The court has, despite Plaintiffs failure to cite record evidence, reviewed the material available and found that there is no dispute of fact as to this matter.

Additionally, when a prisoner alleges that illiteracy or mental impairment has hindered his ability to file a grievance, other courts have required that the prisoner seek help and that the prison reject that request before excusing exhaustion. *Peterson v. Hall*, No. 11-15154, 2012 WL 3111632 at *8 (E.D. Mich. July 2, 2012) (citing *Ramos v. Smith*, 187 F. App'x 152, 154 (3d Cir. 2006) ("With respect to his illiteracy, the District Court correctly noted that the warden is required to give an illiterate inmate the assistance required to prepare and file an appeal. 28 C.F.R. § 542.16(b). Ramos does not claim that he asked for and was refused assistance in filing his administrative appeal. We agree with the District Court that this will not excuse his failure to exhaust.") Indeed, MDOC PD 03.02.130 provides for situations in which prisoners have difficulty filing grievances. "Wardens and FOA Area Managers shall ensure prisoners and parolees are provided assistance in completing a grievance form, if needed. In such cases, assistance shall be provided by a staff member who is not involved in the grievance." *Id.* at ¶ M. Plaintiffs have cited no evidence, and the court finds no evidence in the record, that suggests that any John Doe ever requested help in filing a grievance or that such a request was rejected. The court will therefore find that there is no dispute of material fact as to this issue.

**4. Unavailability of Remedies**

22

A prisoner's failure to exhaust may be excused if administrative remedies are not reasonably available, but the Sixth Circuit requires a prisoner to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier v. Laurel County*, 636 F.3d 218, 223 (CA6 2011) (internal quotations and citations omitted). The Sixth Circuit has "consistently analyzed whether an inmate's efforts to exhaust were sufficient under the circumstances, but in each case the prisoner did something." *Id.* at 224. Additionally, a prisoner's subjective belief that the procedure is ineffective or futile is not enough to excuse exhaustion. *Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006).

Plaintiffs argue that every John Doe "'did something' to bring issues of sexual misconduct to Defendant's attention." Pls.' Opp. at 22. This contention misses the mark, however. Exhaustion is not a protean concept, as Plaintiffs perceive it to be; it is a well defined and specific process. The question is not whether the Does did anything at all, it's whether they did something *to try to comply with the grievance procedure*. In cases where the Sixth Circuit has analyzed whether a prisoner's exhaustion efforts, though not complete, were sufficient, the prisoner has at least tried to file a grievance. *See e.g.*, *Bruce v. Corr. Med. Serv., Inc.*, 389 F. App'x 462, 467 (6th Cir. 2010) (noting that the prisoner tried to file a grievance but "was told Policy 501.01 wouldn't allow it"); *Rancher v. Franklin Cty.*, 122 F. App'x 240, 242 (6th Cir. 2005) (prisoner filed a grievance with the jail, contacted prison personnel, an submitted documents from other prisoners stating that the jail refused to accept medical grievances). No Plaintiff, except Doe 3, submitted even a Step I grievance, and thus they cannot claim that exhaustion would

have been futile.[2] As the Sixth Circuit stated, 'the only way to determine if the process

was available, or futile, was to try." Napier, 636 F.3d at 224.

Plaintiffs also allege that prisoner complaints of sexual harassment were "not

processed as grievances and therefore the prisoner [could not] exhaust that process."

Def.'s Opp. at 14.  Instead, they claim, prisoners were informed that the issues "will be

handled administratively" and that the investigations were conducted and closed by

PREA investigators. Id. As such, "Defendants did not utilize the grievance process to

resolve the sexual misconduct grievances and the response of the MDOC did not allow

for any appeal to step 2 or 3 of the grievance process." Id.

Given MDOC's grievance procedure, Plaintiffs cannot be correct that responses

of this nature would "not allow for any appeal to step 2 or step 3." MDOC PD 03.02.130

provides that a prisoner may file a Step II grievance if he "is dissatisfied with the

response received at Step I or if [he] did not receive a timely response." ¶ BB. The

same goes for Step III. ¶ FF. If a prisoner is dissatisfied because his grievance has

_____

[2] Additionally, the court notes that this finding—that Plaintiffs' failure to attempt to
comply with the grievance process precludes their argument that exhaustion was
futile—also resolves their contention that summary judgment would be premature.
Federal Rule of Civil Procedure Rule 56(d), formerly Rule 56(f), allows a nonmoving
party to submit an affidavit stating that he is unable to present facts essential to his
opposition and should be afforded more discovery. "It is up to the party opposing the
motion to state why more discovery is needed." Wallin v. Norman, 317 F.3d 558, 564
(6th Cir. 2003). At this point, the only evidence that would be essential, or even material,
to Plaintiffs' opposition is evidence that the John Does tried to comply with the
grievance process. Plaintiffs, in their affidavit, Pls.' Mot. at Ex. 10, and in their motion
make no representation that they seek or hope to discover such material. They merely
request additional discovery on the alleged assaults and various John Does' attempts to
raise their concerns outside of the grievance process. New evidence of this type is not
essential to their opposition to a motion for summary judgment for failure to exhaust,
and summary judgment is not premature.

been investigated and resolved by PREA investigators or "handled administratively," a prisoner would always have the option of filing a grievance at the next level. By doing so he would exhaust the prison's administrative process and gain access to the federal courts.

Moreover, it is undisputed that John Does 1, 2, 4, 5, 6, and 7 never tried to file a grievance concerning the issues in this case. Thus, these plaintiffs cannot argue that their grievances were processed incorrectly. Given that this and all of Plaintiffs' above arguments concerning exhaustion have failed, and there are no remaining disputes as to any material facts concerning John Does 1, 2, 4, 5, 6 and 7, summary judgment is proper as to these Plaintiffs.

John Doe 3 did file one Step I grievance but received no response from the prison. Plaintiffs argue that a prison's untimely response or failure to respond to a grievance excuses exhaustion, citing *Boyd v. Corr. Corp. of America*, 380 F.3d 989 (6th Cir. 2004). Pls.' Opp. at 23. *Boyd* does not support Plaintiffs proposition, however, because there are important factual distinctions between that case and the instant case. Critical to the Sixth Circuit's decision in *Boyd* was the fact that Boyd "was required to wait for a grievance officer to make a decision regarding his formal grievance before he could appeal to the warden." 380 F.3d at 996. Thus, by not responding, the prison rendered the rest of the grievance process unavailable to the prisoner. That is not so here. MDOC allows appeal to the next grievance step even when the prisoner has received no response or an untimely response. Thus, Doe 3 was free to appeal to the next step once the prison's response time expired. The administrative remedy was still available to him.

25

Plaintiffs however raise one factual issue that Defendants have made no effort to refute with regards to Doe 3. Doe 3 stated in deposition that "there's some grievances that I wrote that I know that they ripped up because they ripped them up in front of my face." (Dkt. # 133-8, Pg. ID 2831). Thus, Plaintiffs argue that prison officials thwarted Doe 3's efforts to grieve and that this factual issue precludes summary judgment.

The Sixth Circuit's decision in *Surles v. Andison*, 678 F.3d 452, 457 (6th Cir. 2012) is instructive. In *Surles*, a prisoner alleged that when he "attempted to file a grievance . . . [a prison official] refuse [sic] to file or process these grievances." Reversing the district court's grant of summary judgment, the Sixth Circuit held that MDOC did not adequately show that its employees did not interfere with the prisoner's ability to use the grievance process. *Id.* at 457-58. The circuit noted, "if the plaintiff contends that he was prevented from exhausting his remedies [the defendant] must . . . present evidence showing that the plaintiff's ability to exhaust was not hindered." *Id.* at 457 n. 10. Here too, Plaintiffs have presented some evidence in the form of testimony that Doe 3, who did file one grievance, may have been thwarted in his efforts to file others. This creates a triable issue of fact as to Doe 3, making a grant of summary judgment as to him inappropriate.

The Sixth Circuit has also, however, recently held that "disputed issues of fact regarding exhaustion under the PLRA . . . could be decided in a bench trial." *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). *Willey* condoned a district court judge's decision to hear and weigh evidence on the matter of exhaustion before allowing the merits of a case to be tried before a jury. That procedure is appropriate here. Exhaustion is a threshold issue of judicial administration that this court "must address to

26

determine whether litigation is being conducted in the right forum at the right time."

*Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). Accordingly, the court will conduct a

bench trial to resolve this final factual issue with respect to Doe 3 and his claim that his

ability to exhaust was hindered.

### IV.  CONCLUSION

IT IS ORDERED that Defendants' Motion for Summary Judgment [Dkt. # 133] is

GRANTED in part and DENIED in part. Summary judgment is GRANTED as to the

claims of John Does 1, 2, 4, 5, 6, and 7 and DENIED as to the claims of John Doe 3.

IT IS FURTHER ORDERED that the parties shall APPEAR by telephone for a

status conference concerning the bench trial on exhaustion issues on **February 18,**

**2016 at 11:00am. (The Court will initiate the call)**


 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  February 8, 2016


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 8, 2016, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522