**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOHN DOES 1–12,

     Plaintiffs,

v.                                         Case No. 13-14356

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

     Defendants.

_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS CERTAIN CLAIMS

Plaintiffs are former juvenile prisoners who were imprisoned with adults in Michigan Department of Corrections ("MDOC") facilities. They allege that MDOC, by incarcerating them with adults before they had reached the age of 18, acted without regard for Plaintiffs' youthful—and vulnerable—status, resulting in their brutalization by fellow prisoners and MDOC staff. Now before the court is Defendants' Motion for Partial Summary Judgment and to Dismiss Certain Claims. (Dkt. #216.) Plaintiffs have filed a response (Dkt. #220) and Defendants a reply (Dkt. #223). The court has determined that a hearing is unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the following reasons, Defendants' motion will be granted in part and denied in part.

### I. PROCEDURAL HISTORY

Given the complicated procedural nature of this case, the court will begin by laying out the field as it currently stands. Plaintiffs first filed this case on behalf of John Does 1–7. (Dkt. #1.) The court granted Defendants' motion for summary judgment as to

all Plaintiffs, save John Doe 3. (Dkt. #156.) The court determined that none of the John Doe Plaintiffs had exhausted administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and—with the possible exception of John Doe 3—had no legal excuse for the failure. But the court also identified a question of fact as to whether John Doe 3 was excused from the exhaustion requirement, and resolved to hold an evidentiary hearing on the issue. Due to further record development and motion practice from the parties, that hearing has yet to be scheduled.

Following the court's grant of summary judgment without prejudice as to all Plaintiffs save John Doe 3, Plaintiffs amended their complaint to add John Does 8–12. (Dkt. #163.) Defendants moved for summary judgment as to John Does 8, 9, 10, and 12 on the basis of their purported failure to exhaust. The court granted the motion as to John Does 8–10, but held that issues of fact remained as to whether John Doe 12—like John Doe 3—was excused from the exhaustion requirement. (Dkt. #204.) Remaining, then, were (and are) John Does 3, 11, and 12. John Does 3 and 12 are to be scheduled for evidentiary hearings. John Doe 11, who is no longer incarcerated, is indisputably not subject to the exhaustion requirement.

After the amended complaint was filed here, John Does 1, 2, 4, 5, 6, and 7 refiled their claims in a new case, No. 16-13765 (the "2016 case"), purporting to have now exhausted their claims. Defendants filed a motion for summary judgment in that case as to all Plaintiffs save John Doe 7—by the time the second case was filed, John Doe 7 had been released from incarceration. Before the motion for summary judgment was decided, the court entered a stipulated order consolidating the two cases. (Dkt. #208.)

Shortly before this and the 2016 case were consolidated, Plaintiffs refiled the claims of John Does 8, 9, and 10 in a separate action, No. 17-11181 (the "2017 case"). That case proceeded as a standalone case, and Defendants moved for summary judgment on the basis of John Does 8, 9, and 10's failure to exhaust. The court granted the motion. (*See* 17-11181, Dkt. #33.) In that case, the court held that Plaintiffs' new attempt to exhaust their administrative remedies under regulations of the Prison Rape Elimination Act ("PREA") was insufficient to exhaust under the PLRA; specifically, the court determined that the relevant PREA regulations did not have retroactive effect and could not, therefore, serve to revive Plaintiffs' otherwise untimely attempts to exhaust. That case is now on appeal.

*This* consolidated action thus has two Plaintiffs indisputably not subject to the administrative exhaustion requirement: John Doe 7 and John Doe 11, who are no longer incarcerated. The status of John Does 3 and 12 is unresolved—they still require evidentiary hearings to address whether they are excused from the exhaustion requirement. John Does 1, 2, 4, 5, and 6 are subject to the pending motion for summary judgment for failure to exhaust. The claims of all remaining John Does (1–7, 11, 12) in Count IV (for Sex Trafficking of Children Under 18, 18 U.S.C. §§ 1591, 1594) and Count V (for Violation of Treaties and Customary International Law) are subject to Defendants' current motion to dismiss. And Defendants now move for the dismissal of Defendant MDOC on the basis of sovereign immunity.

## II. BACKGROUND

Plaintiffs are current or former inmates in MDOC facilities that were, before they reached the age of 18, imprisoned with adults—a practice MDOC no longer employs. They ate, washed, worked, spent free time, and shared cells with adult prisoners.

Plaintiffs allege that while they were housed with adult prisoners, they were subject to an unreasonable and unconstitutional risk of sexual harassment, sexual assault, battery, and other forms of abuse. As a result, Plaintiffs endured sexual violence and abuse, physical injuries, and trauma.

Because they are currently imprisoned, Plaintiffs are subject to the PLRA. That statute requires that "a prisoner confined in any jail, prison, or other correctional facility" may not bring suit under federal law until he has exhausted the administrative remedies afforded him by his correctional institution. Relevant here are the administrative remedies prescribed by MDOC—specifically, MDOC's formal grievance process, memorialized in Policy Directive ("PD") 03.02.130.

 PD 03.02.130 requires that inmates participate in a multi-step grievance process to their claims. First, within two days of discovering a problem, inmates must attempt to informally resolve their issue with the staff member involved. If the parties cannot resolve the issue informally, the inmate must file a Step I grievance within five days of the attempt. If an inmate is dissatisfied with the response at Step I or does not receive a timely response, he must file a Step II grievance within ten days. The same goes for a Step II grievance—if a prisoner is unsatisfied or fails to receive a timely response at Step II, he must file a Step III grievance within ten days. Inmate complaints "serve to

exhaust a prisoner's remedies only when filed as a grievance through all three steps of the grievance process." (PD 03.02.130, Dkt. #220-2, Pg. ID 5937.)

Plaintiffs first filed this case in 2013. The court ruled that John Does 1, 2, 4, 5, 6, and 7 were required to use this procedure to administratively exhaust their claims, and it determined that they indisputably had not done so. (*See* Dkt. #156.) Plaintiffs were therefore dismissed in February 2016.

Running parallel to Plaintiffs' case was the enactment of new standards under the Prison Rape Elimination Act, 34 U.S.C. §§30301–09 ("PREA"). In 2012, the Department of Justice adopted various standards "for the detection, prevention, reduction, and punishment of prison rape" as required by PREA, 34 U.S.C. § 30307(a)(1). One such regulation, 28 C.F.R. § 115.52(b)(1)[1], provided that prisons "shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse." The regulation had an effective date of August 20, 2012 and "appl[ied] to the Federal Bureau of Prisons immediately upon adoption." § 30307(b). The same was not true for state facilities, however—states receiving federal funding for prisons were required to certify, within two years of the adoption of the rule, that the state was in compliance with the national standard or that it was using federal funds to achieve compliance. § 30307(e)(2)(A), (e)(7)(A). Failure to certify compliance or intent to comply would result in a five percent reduction in "any amount that a State would otherwise receive for prison purposes" from certain federal grants. § 30307(e)(2)(A). In

_____

[1] In its order granting summary judgment in the 17-11181 case, the court inadvertently referred to 28 C.F.R. § 115.51(b)(1) instead of § 115.52(b)(1); the typographical error was an oversight, and in no way disturbs the court's conclusion.

2014, the State of Michigan certified that it was using federal funds to achieve compliance. (Dkt. #216-11.)

In April 2016, MDOC issued Director's Office Memorandum ("DOM") 2016-29 establishing a two-step "PREA grievance process."[2] Under this process, an inmate "may file a PREA grievance at any time by submitting a completed PREA Prisoner Grievance Form." No informal steps are required before filing a PREA grievance. After filing at Step I, the PREA coordinator or inspector must provide a written response within 60 days unless an extension is granted. An inmate may file a Step II appeal if he does not receive a timely response at Step I or is unsatisfied with the response received. "Any grievance containing issues other than sexual abuse shall be returned to the prisoner with instructions to process the prisoner's non-PREA issues in accordance with PD 03.02.130 'Prisoner/Parolee Grievances.'" An inmate's administrative remedies are exhausted through the PREA grievance process when filed through both steps of the process. The PREA grievance process was implemented "effective immediately."

The parties have provided detailed accounts of John Does 1, 2, 4, 5, and 6's attempts to exhaust their claims since summary judgment was granted against them in this case. The court briefly recounts them here.

**John Doe 1.** On May 16, 2016, John Doe 1 filed a grievance alleging that Defendants here failed to protect him from sexual assault and abuse. (*See* Dkt. #220-13.) On June 2, he was informed that his claim had been converted to a PREA grievance and would not be processed under PD 03.02.130. (*See* Dkt. #220-4.) Just

---

[2] Available at http://www.michigan.gov/documents/corrections/DOM_2016-29_PREA_Grievance_Process_523169_7.pdf.

over a month later, he received notice that the investigation of his grievance returned "insufficient evidence" to support the alleged conduct. (*See* Dkt. #220-14.) Still later, on July 11, John Doe 1 received a "Memorandum" informing him that "the investigation that was conducting concerning an allegation that you made . . . has been completed." (Dkt. #220-15.) The Memorandum went on to conclude that "the evidence produced in this investigation did not substantiate any work rule violations or policy/procedure violations and this matter is now considered closed." (*Id.*)

John Doe 1, apparently concerned that this July 11 Memo constituted his Step I response, requested a Step II appeal form. (*See* Dkt. #220-16.) Though it does not appear in the record, John Doe 1 was evidently successful in submitting a Step II appeal, though Plaintiffs aver that it took continued requests for Defendants to supply the form. (*See* Dkt. #220, Pg. ID 5913.) He received a "PREA Prisoner Grievance Appeal (Step II) Decision" on September 27, 2016—the appeal was denied. (*See* Dkt. #220-18.) Curiously, John Doe 1 also received a "Step II PREA Grievance Appeal Response" sometime after September 13. (*See* Dkt. #220-19.) This "Response" denied his appeal on the basis that it was too late—a basis not included in the Step II "Decision" John Doe 1 received.

**John Doe 2.** On March 27, 2016, John Doe 2 submitted a grievance alleging that he had endured sexual assaults and abuse that Defendants failed to prevent. (*See* Dkt. #220-20.) His grievance was denied on the basis that it was "untimely, vague" and included "multiple issues." (*Id.*) John Doe 2 also received a formal rejection letter informing him that the grievance was rejected because he "exceeded [his] time limits in filing a grievance." (*See* Dkt. #220-21.) Apparently unable to obtain a Step II appeal

form, John Doe 2 mailed an appeal directly to Step III. (*See* Dkt. #220-22.) The appeal was rejected by a decision dated June 29, 2016 for failure to include a Step II response. (*See* Dkt. #220-23.)

Undeterred, John Doe 2 received a Step II form and resubmitted his appeal. (*See* Dkt. #220-24.) Plaintiffs say that he received no Step II response, so John Doe 2 appealed again to Step III. He received a Step III decision that the "rejection [was] upheld." (*See* Dkt. #220-25.) At this point, though, John Doe's claims were also diverted to the PREA process: the Step III decision explained that "your allegation of sexual abuse has been referred to the facility PREA coordinator. . . . [S]taff will notify you once a determination is made." (*Id.*) If a decision was made through the PREA process, it does not appear in the record.

**John Doe 4.** On March 11, 2016, John Doe 4 submitted a grievance alleging that Defendants failed to protect him from sexual abuse he endured at the hands of fellow inmates. (*See* Dkt. #220-26.) He also alleged that he was sexually abused by a corrections officer. (*Id.*) Plaintiffs allege that after he failed to receive a response, John Doe 4 filed a Step II grievance in early April. Because he was unable to obtain a form as requested, however, he was unable to keep a carbon copy—Plaintiffs, without the benefit of discovery, have not been able to determine whether a copy exists.

John Doe 4, however, did receive a document dated May 4 stating that his allegations about the corrections officer "ha[d] been investigated and determined to be Insufficient Evidence." (*See* Dkt. #220-27.) The document concluded: "This matter is now considered closed and no further action will be taken." (*Id.*) He also received a "Notification of Sexual Abuse and Sexual Harassment Investigative Findings and

Action," similarly dated May 4, informing him that there was insufficient evidence to support his allegations. (*See* Dkt. #220-28.)

On May 12, 2016, John Doe 4 finally received a response to his initial grievance. (*See* Dkt. #220-26.) The response noted that "[a]fter following all applicable PREA requirements and referrals relevant to your allegation of staff sexual misconduct, it was found that the allegations are unsubstantiated, false and lack credibility." (*Id.*) It concluded: "Your grievance was investigated and handled in accordance to all policies and procedures related." (*Id.*) John Doe 4 submitted appeals to Step III—sent on his behalf by counsel, *see* Dkt. #220-29—to the MDOC Office of Legal Affairs and the PREA Administrator, both in Lansing, Michigan. (*See* Dkt. #220-30.)

In their Motion for Summary Judgment, Defendants aver that John Doe 4 never appealed past the denial of his initial grievance—which was eventually responded to on May 12, *see* Dkt. #220-26—and thus John Doe 4 failed to exhaust by virtue of his decision not to appeal to Steps II and III. Their reply brief, however, changes tack dramatically: Defendants acknowledge receiving John Doe 4's handwritten appeals to the Office of Legal Affairs and the PREA Administrator. (*See* Dkt. #223, Pg. ID 6082.) They aver that "Defendants' counsel were not aware of these handwritten appeals until receiving Plaintiffs' response brief, which lead [sic] to discovery of the appeal documents." (*Id.*)

Defendants acknowledge yet another error with respect to John Doe 4: his initial grievance "should have been rejected as untimely, with the staff sexual misconduct claims, and only those claims, referred for an internal investigation." (*Id.* at Pg. ID 6081.) But while the "sexual misconduct claims were referred for investigation, the grievance,

technically, was not rejected." (*Id.* at Pg. ID 6081–82.) John Doe 4's handwritten appeal to the PREA Administrator, however, was denied—by letter attached for the first time to Defendants' reply brief—on the basis that it "was not timely filed." (Dkt. #223-2.) Defendants allege, without citation to the record, that "JD 4's 'Step III' appeal was not responded to in light of the Step II PREA response." (Dkt. #223, Pg. ID 6082.)

**John Doe 5.** On March 25, 2016, John Doe 5 filed his grievance alleging that Defendants failed to protect him from assault and sexual abuse he endured at the hands of fellow inmates. (*See* Dkt. #220-31.) He also alleged that he was sexually abused and subjected to excessive force by female prison staff. (*Id.*)

He did not receive a response for some weeks, until receiving a notice—dated May 18, 2016—that his grievance was being referred to a PREA investigator. (*See* Dkt. #220-5.) On May 26, he received a response to his converted PREA grievance; it concluded that "[t]he investigation found INSUFFICIENT EVIDENCE to support that the alleged conduct occurred." (*See* Dkt. #220-35.)

On August 9, John Doe 5 received a notice, referencing his March 2016 grievance, informing him that "[y]our complaint from March 2016 regarding multiple employees has been thoroughly investigated and found to lack sufficient information, or evidence, to support your allegation(s)." (*See* Dkt. #220-33.) On August 31, John Doe 5 submitted an appeal. (*See* Dkt. #220-34.) Plaintiffs aver that he never received a response. John Doe 5 did, however, receive five separate documents (dated between May and July 2016) purporting to be the results of various PREA investigations. (*See* Dkt. #220-35.)

**John Doe 6.** On May 21, 2016, John Doe 6 submitted a grievance alleging that Defendants had failed to protect him from sexual harassment and abuse by adult prisoners. (*See* Dkt. #220-36.) Two days later, he was advised that his grievance would be processed as a PREA grievance. (*See* Dkt. #220-6.) Some weeks went by before John Doe 6 received a PREA finding letter, dated August 31, informing him that there was insufficient evidence to support his allegations. (*See* Dkt. #220-37.) He filed a PREA appeal on September 23. (*See* Dkt. #220-38.)

All told, Plaintiffs submit that all but John Doe 2's claims were processed as PREA grievances, and were pursued sufficiently to exhaust their administrative remedies. (*See* Dkt. #220, Pg. ID 5908 ("All but JD 2's grievances were processed without time limits and as PREA grievances.").)

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). It is the parties' responsibility to support their factual assertions by

citation to the record; the court is under no obligation to search for materials in the record uncited by the parties. Fed. R. Civ. P. 56(c).

Pleading matters, in contrast to summary judgment, are governed by Federal Rule of Civil Procedure 8. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must demonstrate more than just a possibility of wrongdoing; rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. The court views the complaint in the light most favorable to the plaintiff, and it accepts all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). The court need not, however, "accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### IV. DISCUSSION

Because the legal and factual issues in this matter are largely duplicative of the issues in the court's order granting summary judgment in the 2017 case, the court draws heavily on that opinion in coming to its decision here.

Defendants contend that, in line with the court's order granting summary judgment in the related case, they are entitled to summary judgment here because John Does 1, 2, 4, 5, and 6 have failed to exhaust their administrative remedies.

Plaintiffs, in response, argue that they properly satisfied the requirements for exhaustion through the PREA grievance process. And even if the court were to deem some part of Plaintiffs' exhaustion procedures lacking, they say, Defendants' policies and practices are so convoluted that they effectively prevent Plaintiffs from being able to adequately exhaust. If that is the case, according to Plaintiffs, they should be excused from the exhaustion requirement.

## A. Summary Judgment as to John Does 1, 2, 4, 5, and 6 for Failure to Exhaust

Defendants move for partial summary judgment; they claim that John Does 1, 2, 4, 5, and 6 have not properly exhausted their administrative remedies such that they can bring suit under federal law.

### i. The Administrative Exhaustion Requirement

Under the PLRA, inmates may not bring federal actions challenging prison conditions without first exhausting "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense that must be raised and proved by a defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The prison's requirements define the boundaries of proper exhaustion—not the PLRA. *Id.* at 218. Thus "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Defendants argue that Plaintiffs have still failed to exhaust their administrative remedies as required under PD 03.02.130. They point to this court's earlier determination that the only procedure that could properly exhaust Plaintiffs' claims was the formal grievance process of PD 03.02.130. (Dkt. #156, Pg. ID 3596; Dkt. #204, Pg.

ID 5221.) They also note the court's later conclusion that "most of the Does are likely now time barred from exhausting their claims." (Dkt. #188, Pg. ID 4101.)

Plaintiffs do not attempt to persuade the court that their grievances were timely or properly submitted through the formal grievance procedure in PD 03.02.130. Instead, as noted above, Plaintiffs argue that "[t]he PREA grievance process is a two-step process that John Does 1, 4, 5 and 6 exhausted by appealing through Step II, despite the barriers placed by Defendants' refusal to provide appeal forms or comply with their own procedures." (Dkt. #220, Pg. ID 5904.) As to John Doe 2, they argue, Defendants improperly foreclosed his grievance from PREA review, so he should be deemed to have administratively exhausted by virtue of Defendants' failure to abide by their own policies. (*Id.* at Pg. ID 5905.) Plaintiffs' arguments fail for the reasons set forth below, and summary judgment will be granted as to John Does 1, 2, 5, and 6. But in light of Defendants' disclosures as to John Doe 4, for the first time in reply, summary judgment will be denied without prejudice as to him.

### ii. Retroactivity of PREA Grievance Procedures

MDOC did not adopt its PREA grievance process until April of 2016. John Doe 1 alleges that he was subjected to physical violence and raped in 2012. (*See* 16-13765, Dkt. #1, Pg. ID 20–22.) John Doe 2 alleges that he was sexually assaulted, sexually harassed, and raped in 2012. (*See id.* at Pg. ID 22–24.) John Doe 4 alleges that he was physically and sexually assaulted and coerced into sexual intercourse in 2012 and 2013. (*See id.* at Pg. ID 24–25.) John Doe 5 alleges that he was sexually harassed, sexually assaulted, and raped in 2011 and 2012. (*See id.* at Pg. ID 26–28.) John Doe 6

alleges that he was sexually harassed and raped between 2012 and 2013. (*See id.* at Pg. ID 28–30.)

Plaintiffs' claimed injuries occurred long before the implementation of a PREA grievance process. Plaintiffs' claims could be properly exhausted through that process, therefore, only if the regulation mandating the new procedure and eliminating the deadline to file sexual assault grievances—28 C.F.R. § 115.51(b)(1)—had retroactive effect once adopted by the state institution.

The court is guided by two principles, inherently in tension, when it examines intervening changes in the law. Though generally "a court must apply the law in effect at the time it renders its decision," the court "should not construe congressional enactments and administrative rules to have retroactive effect unless their language requires this result." *BellSouth Telecomms., Inc. v. Se. Tel., Inc.*, 462 F.3d 650, 657 (6th Cir. 2006) (internal quotation marks omitted) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 263–64 (1994)). All told, "courts should apply the law in effect at the time that they decide a case *unless* that law would have an impermissible retroactive effect as that concept is defined by the Supreme Court." *Id.* (emphasis original).

Congress may enact laws that apply retroactively; the court therefore looks to the text of a statute "to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf*, 511 U.S. at 280. If the statute explicitly provides for retroactive effect, the court's inquiry is complete. But in the absence of such an "express command," the court must determine whether the law would impose impermissible retroactive effect if permitted to reach conduct occurring before its enactment. *Id.*

A law is impermissibly retroactive if "the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. The court looks to whether the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. Courts take "sound guidance from familiar considerations of fair notice, reasonable reliance, and settled expectations." *BellSouth*, 462 F.3d at 658 (internal quotations omitted). If the court determines that the statute would operate retroactively, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280. Procedural rules, on the other hand—rules that regulate secondary rather than primary conduct—may appropriately be applied in cases arising before their enactment. *Id.* at 275.

As it did in the 2017 case, the court finds that § 115.52(b)(1) and the resulting PREA grievance process would have an impermissible retroactive effect if applied to this case. The court has identified nothing in the statutory language, nothing in the text of the regulation, and nothing in the PREA grieving process itself that would indicate the regulation carried an "express command" of retroactive effect. States were not required to certify compliance with the rule until two years after the rule was promulgated, *see* 34 U.S.C. § 30307(e)(2)(A), (e)(7)(A), a delay that is significant in showing that the enactment did not reach conduct occurring before it became effective. *See Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 892 (6th Cir. 2016) (finding that a FCC regulation with an effective date 90 days after promulgation was intended to give parties time to come into compliance); *Campbell v. Nationstar Mortg.*, 611 F. App'x 288,

297 (6th Cir. 2015) (finding that a CFPB regulation with an effective date a year after promulgation was not intended to apply retroactively).

The court similarly has no doubt that retroactive application of § 115.52(b)(1) to Defendants would "increase [their] liability for past conduct." *Landgraf*, 511 U.S. at 280. If Plaintiffs were allowed to use the new PREA process to exhaust claims previously foreclosed by Plaintiffs' failure to properly exhaust in the first instance, Defendants would be exposed to potentially massive liability on stale or unexhausted claims. The court cannot properly impose such new liabilities on Defendants in the absence of a clear congressional expression that the rule should reach that far.

And, as the court said before, this conclusion is in line with "familiar considerations of fair notice, reasonable reliance, and settled expectations." *BellSouth*, 462 F.3d at 658 (internal quotations omitted). Plaintiffs having failed to exhaust using MDOC's formal grievance procedures (and, indeed, being dismissed on that basis from this case), Defendants could reasonably have assumed that they were no longer subject to the claims Plaintiffs raise here.

Plaintiffs' claims arose before MDOC's adopting of a PREA grieving process. Because § 115.52(b)(1) and the resulting process do not apply retroactively, Plaintiffs were not permitted to use the PREA grieving process to exhaust claims arising before its enactment.

Plaintiffs resist this conclusion; they argue that the regulation barring deadlines on grievances alleging sexual abuse had an "Effective Date" of August 20, 2012. Regardless of when MDOC finally approved its PREA grievance procedures, Plaintiffs say, the regulation itself eliminated the deadlines for sex-abuse related grievances,

making any grievance submitted by Plaintiffs timely if filed for allegations occurring after August 20, 2012. But in focusing on the text of the *regulation*, Plaintiffs miss the relevant provisions of the *statute* dictating regulatory compliance. States were 1) given time to come into compliance with PREA regulations, *see* 34 U.S.C. § 30307(e)(2)(A), (e)(7)(A), and 2) not actually *required* to adopt the regulations at all. Failure to certify compliance or intent to comply would result in a five percent reduction in "any amount that a State would otherwise receive for prison purposes" from certain federal grants.

§ 30307(e)(2)(A). As this court noted in this case over four years ago:

> Although the United States is correct that the PREA standards apply to state correctional systems, nowhere does it appear that state compliance is mandatory. Rather, states may choose whether to certify their full compliance with the PREA's national standards, or assure the government that it is using 5% of the federal funds it receives to achieve full compliance. 42 U.S.C. § 15607(e)(2). A failure to adopt either course of action reduces a state's funding for prison purposes by 5% for each fiscal year it is non-compliant. *Id.* Although the court has no doubt that a 5% reduction in federal funding has bite, states appear free to choose whether to comply with the PREA and receive this funding, or ignore it and face cuts in their budgets. Thus, Michigan appears to be correct in characterizing its compliance with the PREA as "voluntary."

(Dkt. #91, Pg. ID 1619.) As to other parties subject to the regulation, on the other hand, Congress imposed different compliance standards. For the Federal Bureau of Prisons, for example, the national standards were to apply "immediately upon adoption of the final rule." § 30307(b). Plaintiffs miss they mark when they conclude that the effective date of the regulation is controlling on MDOC; Congress contemplated that the regulation, regardless of its effective date, would go into effect as to certain entities at different times.

The institutions' administrative exhaustion procedures control for the purposes of the PLRA. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). MDOC did not adopt a set of

PREA grievance procedures until April 2016. Before those policies were effective, then, MDOC's formal grievance procedure applied. Plaintiffs do not attempt to persuade the court that they have now managed to exhaust their administrative remedies under those formal procedures.

### iii. Processing Untimely Grievances on the Merits

Plaintiffs are correct, however, that prison officials may forfeit any ability to challenge the timeliness of grievances if they process those grievances on the merits. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we."). It seems, then, that Plaintiffs had no choice but to hope that MDOC would process their grievances through the formal three-step process on the merits, without rejecting them for timeliness.

In their response to the motion for summary judgment, Plaintiffs do not argue that any one of the John Does had his grievance processed on the merits through the formal process in PD 03.02.130. But that may be in large part due to the fact that Defendants apparently had not yet marshalled some of the material facts in this case until the reply was filed.

In their reply brief, Defendants assert for the first time that a mistake was made with respect to John Doe 4's grievance filed March 11, 2016. They say now that "[t]his grievance should have been rejected as untimely, with the staff sexual misconduct claims, and only those claims, referred for an internal investigation." (Dkt. #223, Pg. ID 6081.) But while the sexual misconduct claims went through the appropriate procedure, Defendants aver, "the grievance, technically, was not rejected." (*Id.* at Pg. ID 6082.)

And, as explained above, Defendants only now seem to have realized that John Doe 4 filed handwritten appeals to both the grievance section of the Office of Legal Affairs and the PREA Administrator. They say, without citation to the record or other supporting evidence, that "JD 4's 'Step III' appeal"—that is, his appeal through the normal grievance process—"was not responded to in light of the Step II PREA response." (*Id.* at Pg. ID 6082.)

Defendants go on to argue that, even assuming John Doe 4's claim was processed as a general grievance through the formal grievance procedures, his original grievance was not specific enough to deem his claims properly exhausted here. *See Bell v. Konteh*, 450 F.3d 651, 652 (6th Cir. 2006) (noting that to properly exhaust, the prisoner's grievance must identify each defendant individually sued *and* allege "mistreatment or misconduct" on the part of each defendant). They say, once more without citation to the record or other supporting evidence, that "the generalized allegations of failure to protect or provide services and programming against the named Defendants were not investigated on the merits during the course of the sexual misconduct investigation," meaning that John Doe 4 could not have properly exhausted those claims. (Dkt. #223, Pg. ID 6084.)

Defendants reach too far. By concluding that § 115.52(b)(1) and the resulting PREA grievance process do not apply retroactively, the court has, in essence, determined that Plaintiffs' claims could properly be grieved only if Defendants decided to process Plaintiffs' renewed grievances on the merits—thereby forfeiting a claim that such grievance was untimely. Defendants, as the parties moving for summary judgment, bear the burden to establish that there are no genuine issues of material fact

such that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). It is not

enough, at this stage, for Defendants to say, without supporting evidence, that John

Doe 4's grievance was not processed on the merits—especially in light of the fact that

Defendants seem to be learning facts related to this case from the summary judgment

briefing itself.

Defendant's motion will therefore be denied without prejudice as to John Doe 4.

More facts—supported by record evidence—are needed before the court can determine

that John Doe 4's grievance was not processed on the merits.

### B. Defendants' Motion to Dismiss Count V as to All Plaintiffs

Defendants move for dismissal of Count V of Plaintiffs' renewed complaint (16-

13765, Dkt. #1), which purports to include claims brought under 42 U.S.C. § 1983 for

violations of customary and international law. Defendants point out that the court has

already dismissed these claims with prejudice. (*See* Dkt. #91, Pg. ID ("Count V of

Plaintiffs' complaint is DISMISSED WITH PREJUDICE.")) Plaintiffs apparently re-added

this claim to their complaint before refiling in the 2016 case.

Plaintiffs, for their part, "agree to the dismissal of Plaintiffs' claims set forth in the

original complaint as to Plaintiffs' § 1983 claim set forth in Count V." (Dkt. #22, Pg. ID

5932.) Count V is—and remains—dismissed.

### C. Defendants' Motion to Dismiss the Michigan Department of Corrections

Defendants move to dismiss the Michigan Department of Corrections on the

basis of sovereign immunity. As pled, Plaintiffs' complaint brings claims against MDOC

in Count V (already dismissed) and Count IV, which seeks injunctive relief against "all

Defendants" for sex trafficking of children under eighteen by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591, 1594.

A suit against a State is "barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit," or Congress has abrogated the State's Eleventh Amendment immunity. *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (alteration original) (quoting *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)). The Eleventh Amendment extends to suits where "the state is the real, substantial party in interest," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quotation omitted).

Congress did not abrogate the States' Eleventh Amendment immunity for the purposes of § 1983 suits. *Harrison*, 722 F.3d at 771 ("It is well established that § 1983 does not abrogate the Eleventh Amendment . . . ."). And Michigan has not consented to suit under § 1983. *Id.* Nor does the court see anything to suggest that 18 U.S.C. §§ 1591, 1594 abrogated the State's sovereign immunity.

Under these longstanding principles, the claims against MDOC must be dismissed on the basis of sovereign immunity. Plaintiffs acknowledge that dismissal is appropriate. They concede in their response to the motion to dismiss that "[t]o the extent Defendants' request is limited only to Defendant MDOC as to Count IV, Plaintiffs do not oppose this Defendants' [sic] dismissal." (Dkt. #220, Pg. ID 5931.)

### D. Defendants' Motion to Dismiss Count IV as to All Plaintiffs

Finally, Defendants move to dismiss Plaintiffs' claims in Count IV for sex trafficking of children under eighteen in violation of 18 U.S.C. §§ 1591, 1594. Plaintiffs bring this claim under the "civil remedy" afforded to individuals in § 1595: "An individual

who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits . . . in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." Specifically, Plaintiffs claim that John Does 1 and 5 are entitled to damages against individual Defendants Prelesnik, Berghuis, and Stoddard "because they and/or their agents facilitated and participated in creating an environment that resulted in the unlawful sex trafficking of vulnerable children, including Plaintiffs." (16-13765, Dkt. #1, Pg. ID 38.) They also seek injunctive relief on behalf of "[a]ll Plaintiffs and Class Members" which would enjoin all Defendants from "maintaining a prison system whereby vulnerable prisoners, including Plaintiffs, can be used in sex trafficking activities." (*Id.*) Defendants argue that Count IV does not state a claim for sex trafficking.

The court will withhold ruling on this issue until it is definitively settled that the remaining Plaintiffs are properly before the court. Having now decided that Defendants are entitled to summary judgment against John Does 1, 2, 5, and 6 on the basis of their failure to exhaust, remaining as Plaintiffs in this matter are: John Doe 3, who will be subject to an evidentiary hearing to determine whether or not he was excused from the exhaustion requirement; John Doe 4, whose fate—as the court has now determined— cannot be determined without more evidence regarding how his grievance was processed; John Doe 7, who is indisputably not subject to the exhaustion requirement because he is no longer incarcerated; John Doe 11, who is similarly not subject to the exhaustion requirement because he is no longer incarcerated; and John Doe 12, who— like John Doe 3—will be subject to an evidentiary hearing to determine whether or not he was excused from the exhaustion requirement.

Plaintiffs, in other words, no longer have a claim for damages in Count IV because the two Plaintiffs claiming damages—John Does 1 and 5—will be dismissed from this matter. Whether the three Plaintiffs who are still incarcerated—John Does 3, 4, and 12—have properly exhausted remains to be determined. And the court is doubtful that the two Plaintiffs who are not subject to the exhaustion requirement—John Does 7 and 11—can carry forward a claim for injunctive relief meant to enjoin Defendants from "maintaining a prison system whereby vulnerable prisoners, including Plaintiffs, can be used in sex trafficking activities" when they themselves are not incarcerated.

The court will deny Defendants' motion to dismiss Count IV without prejudice. The court is wary of deciding whether Plaintiffs have plausibly alleged a violation of 18 U.S.C. §§ 1591, 1594 under *Iqbal* and *Twombly* when it remains to be seen whether the still-pending, still-incarcerated Plaintiffs have properly exhausted (as with John Doe 4) or are excused from the requirement (as with John Does 3 and 12) such that they—and their factual allegations—will continue to be a part of this case. The denial is without prejudice to Defendants' ability to raise the issue again after it becomes apparent which Plaintiffs will continue on in this case and have standing to assert a claim for injunctive relief on behalf of all Plaintiffs and the purported class.

## V. CONCLUSION

As to John Does 1, 2, 5, and 6, Plaintiffs have still failed to exhaust their claims as required by the PLRA, and summary judgment as to them is once more appropriate. But John Doe 4's fate is not yet certain. On stipulation of the parties, the court will dismiss Count V and Defendant MDOC. Defendants' motion to dismiss Count IV,

however, must wait until this case progresses to greater certainty as to the status of the Plaintiffs in this matter.

It is now time to hold evidentiary hearings and decide whether John Does 3 and 12 were excused from the administrative exhaustion requirement. In light of the breadth of issues addressed in this order, and the now-exceedingly complicated procedural posture of this case, the court will conduct a telephone conference with the parties to determine next steps. Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment and to Dismiss Certain Claims (Dkt. #216) is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED as to the claims of John Does 1, 2, 5, and 6, and DENIED as to the claims of John Doe 4. It is further DENIED WITHOUT PREJUDICE as to Count IV of Plaintiffs' complaint.

IT IS FURTHER ORDERED that Count V of Plaintiffs' complaint is, and remains, DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant Michigan Department of Corrections is DISMISSED from this matter.

IT IS FURTHER ORDERED that the parties shall APPEAR by telephone for a status conference on **Tuesday, November 20, 2018 at 10:00 am.**

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: November 5, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 5, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner            /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\13-14356.DOES.PartialSJ.FailuretoExhaust.KNP.docx